L. H. BURNLEY et al.,
Plaintiffs-Appellants,

v.

Ronnie THOMPSON, etc., et al.,
Defendants-Appellees.

No. 74–1194.

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1975.

Before BROWN, Chief Judge, BELL and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellants, in three groups,[1] are 60 fire fighters of the City of Macon, Georgia who were discharged for their participation in an illegal strike. In this action under 42 U.S.C.A. § 1983, the fire fighters challenge the constitutionality of the procedures by which their employment was terminated. We agree with the District Court that there was no denial of due process in the proceedings by which they were discharged and affirm.

### Fire Fighters Fight City Hall

On July 5, 1972, the City Council of Macon met and voted to grant city police officers, but not fire fighters, a pay raise, thereby departing from a long-standing policy that police officers and fire fighters be paid according to the same scale. Within an hour after the City Council announced its decision, various fire fighters left their posts of duty and others began failing to report for assigned duty. During the following days, between July 6, 1972 and July 10, 1972, various other fire fighters either left their posts or failed to report for scheduled assignments, leaving the Macon Fire Department at between 30% and 50% of normal capability for a period of weeks. During this work stoppage, several union meetings were held, attended by most of the union members in the Fire Department, and the striking fire fighters set up picket lines in front of City Hall and various fire stations.

During this period, the Fire Committee of the City Council met several times

Russell X. Thompson, Memphis, Tenn., for plaintiffs-appellants.

Homer L. Deakins, Jr., H. Lane Dennard, Jr., Atlanta, Ga., for defendants-appellees.

1. For ease of reference to the various subsets of appellants, the 17 probationary fire fighters who were summarily discharged will be referred to as Group 1 (*see* note 3, *infra*), the three nonprobationary fire fighters who were discharged after individual hearings as Group 2 (*see* note 7, *infra*), and the 40 nonprobation-

ary fire fighters discharged after a joint hearing as Group 3(a) and 3(b) (*see* note 8, *infra*). In addition, the 35 nonprobationary fire fighters who were reinstated after the joint hearing will be referred to as Group 3(c), though they are not parties to this case.

to discuss the general situation and to keep apprised of current activities. Fire Chief Schaeffer, who compiled information concerning the strike from his own personal knowledge and from reports by his staff, and who kept daily logs on the fire fighters who had not reported for duty, also attended these meetings. The City made a concerted effort to persuade the fire fighters to return to work, including a promise that they could return without fear of losing their jobs. These efforts were not successful, and the City continued to have a crippled fire-fighting force.

### City Fights Back

The City then took stronger action. On July 10, 1972, Fire Chief Schaeffer discharged 17 striking probationary fire fighters. They were on probationary status because they had been on the job less than 18 months, and, under ordinances of the City of Macon, they were not yet "employees" of the City or members of the Fire Department.[2] These 17 fire fighters [3] were not given any type of hearing, and the City has declared that they will not be rehired.

In addition, by July 16, 1972, a total of 78 nonprobationary fire fighters, full members of the Fire Department, had been suspended by Mayor Thompson or Fire Chief Schaeffer, without pay, on charges of (1) willful disobedience of orders, (2) leaving station without just cause, (3) neglect of duty, (4) conduct subversive of good order and discipline of the department, and (5) striking, all of which actions were in violation of ordinances and the City Charter of Macon,[4] as permitted by Georgia statute.[5]

---

**2.** The Ordinance of the City of Macon codified as § 2–25 provides: "the number, organization, and duties of members and employees of the Fire Department shall be fixed from time to time by the Mayor and Council of the City. To become a member or employee of the Fire Department, so as to come within the provisions of the Civil Service Rules and Regulations of the City Charter as amended and the Rules and Regulations set forth in this chapter, an (sic) person first must be qualified for employment by the Civil Service Board, selected for employment by the Fire Committee, undergo the prescribed period of training, and serve satisfactorily in probationary status for a period of (18) eighteen months, and then be accepted as a member of the Fire Department by official action of Mayor and Council. No person serving in the Department in a probationary status or who has not been accepted as a member of the Fire Department by official action of Mayor and Council can become a member or employee of the Department until he has met the foregoing requirements. The terms 'member' and 'employee' are used interchangeably herein."

**3.** These fire fighters are: J. F. Addison, B. F. Barfield, III, J. J. Charlesworth, W. H. Durden, J. R. Eavenson, D. C. Floyd, T. A. Gunter, Leroy Jackson, Jr., G. W. Lance, C. E. Lindsey, T. E. Miley, C. P. Mitchell, Jr., Jake Myers, Jr., B. G. Poole, Harold Samuels, R. C. Story, and L. D. Wilson, Jr. (Group 1).

**4.** The Macon City Charter allows fire fighters to join a labor organization but prohibits strikes.

Sec. 91 of Macon City Charter provides:

"From and after the passage of this act [Ga. L.1951, Act No. 129, approved February 14, 1951], it shall be lawful and legal for any member of the Fire Department of the City of Macon to join, be affiliated with a Union organization, provided that the local charter of any such organization or unit shall provide and stipulate that the members of the local organization or unit cannot strike, and any such member so joining, being affiliated with, or becoming a member of such organization herein described, shall not be subject to any penalty or discrimination by reason of his having so joined, being affiliated with, or become a member of such organization, provided further, that if any employee of the Macon Fire Department does strike he shall be automatically discharged. (Ga.L.1951, Act No. 129, Sec. 2)"

**5.** Ga.Code Ann. § 69–1015 et seq. The Fire Fighter's Mediation Act, Ga.Code Ann. § 54–1301 et seq., specifically authorizes municipal fire fighters to be represented by a labor organization, Ga.Code Ann. § 54–1304, but prohibits work stoppages, slowdowns or strikes. Ga.Code Ann. § 54–1312. Ga.Code Ann. § 54–1302 states the policy behind the Act:

The protection of the public health, safety and welfare demands that the permanent members of any paid fire department of a municipality should not be accorded the right to strike or engage in any work stoppage or slowdown. This necessary prohibition, however, shall not prohibit such municipal employees from being represented by a labor organization of their choice, and from

## City Administrative Hearings

All of the suspended nonprobationary fire fighters were given an opportunity for an individual hearing before the Fire Committee, in accordance with city ordinances,[6] after which the Committee would decide if a permanent discharge was appropriate. The Fire Committee held a full hearing for three[7] of the suspended nonprobationary firemen at which each was represented by counsel. On August 31, 1972, the Committee rendered its decision that each of these fire fighters be permanently discharged. Following these three hearings, lawyers for the Firefighters International Union began representing the discharged and suspended firemen. With the change of counsel, the hearings ceased to be held, and instead a period of negotiation between the City and attorneys for the fire fighters began.

## The Lawyers Take Over

During the course of the various negotiation meetings, most of which were attended by City Attorney Miller, the discussion pertained to the number of fire fighters, not particular individuals, which would be reinstated or discharged. It was the object of the representatives of the fire fighters to obtain the reinstatement of the maximum number of fire fighters, and the negotiations were ultimately to determine what that number was. Various formulas of selection for reinstatement were suggested during these discussions, but individual conduct of individual fire fighters was not discussed. The Fire Committee, however, never refused to offer individual hearings to the fire fighters to determine which, if any, were guilty of misconduct during the labor dispute.

An agreement was finally reached between the City and representatives of the fire fighters as to the numbers, whereby the Fire Committee would reinstate 35 suspended fire fighters and would discharge the remaining 40 suspended fire fighters. The agreement also provided that the case of each of the fire fighters would be submitted to the Fire Committee of the City Council in the form of an agreed statement of facts in lieu of an evidentiary hearing before the Committee.

bargaining collectively concerning wages, rates of pay and other terms and conditions of employment.

It is hereby declared to be the public policy of this State to accord to the permanent members of any paid fire department of certain municipalities, as hereinafter provided, all of the foregoing enumerated privileges other than the right to strike or to engage in any work stoppage or slowdown.

The Act goes on to establish a method of mediation for resolving disputes between fire fighters and municipal authorities.

6. The applicable ordinances of the City of Macon provide:

"Sec. 2–128. Public Trial.

"A speedy and public trial shall be given any member under charges of suspension (Code 1947, Section 23–103)"

"Sec. 2–129. Discharge.

"No member shall be discharged until after trial or opportunity therefore. (Code 1947, Sec. 23–104)"

"Sec. 2–130. Suspension.

"No member shall be suspended for a period exceeding fifteen days without an opportunity for a trial, unless such trial cannot be had for causes beyond the control of the Fire Committee or at the instance of the member, in either of which events the committee may continue in force any previous suspension of such member pending trial. (Code 1947, Sec. 23–105)"

"Sec. 2–134. Witnesses and Counsel.

"Upon the trial of any member, he shall be confronted with the witnesses against him; and be represented by counsel in his discretion; except that sworn depositions of any witness may be used in the trial. (Code 1947, Sec. 23–109)"

"Sec. 2–135. Right of Petition.

"The right of petition to the Mayor and Council is hereby granted to each member. (Code 1947, Sec. 23–110).

"Sec. 2–136. Written charges required.

"All charges against any member shall be written and sufficiently specific to enable him to intelligently defend same, but the decisions of the Fire Committee on objections made to the sufficiency of such charges shall be final. (Code 1947, Sec. 23–111)"

7. Fire fighters L. H. Burnley, W. T. Culpepper and K. H. Smith.

### The Facts Are Settled

Counsel for the fire fighters subsequently met informally with City Attorney Miller and Fire Chief Schaeffer, at which meeting fire fighters' names were called out and counsel for the fire fighters offered various facts of mitigating circumstances or information pertaining to medical reports for the particular fire fighter being discussed. The agreed statement of facts [8] was then prepared

8. The agreed statement of facts, the recommendation of City Attorney Miller, and the response of counsel for the fire fighters were as follows:

MR. MILLER: Mr. Chairman, I would like to read the following statement of facts into the record at this time.

"On July 5, 1972, the Council of the City of Macon voted a pay increase for City policemen which created a disparity in the pay scales of City policemen and firemen in favor of the police. As a direct and proximate result of this legal action of the City Council, the following named City firemen did, on July 5, 1972, collaborate and conspire with one another, and did, in concert of action, leave their posts of duty at the various fire stations at which they were employed, without just cause, and subsequently failed and refused to return to their posts of duty after being ordered to do so by their superior officers. Further, after having left their posts of duty without just cause, the following named firemen did conspire with and incite other firemen to join with them in failing and refusing to report for duty as ordered by their superior officers: L. T. Bass, W. T. Culpepper, B. G. Daniels, W. J. Hobbs, J. M. Kitchens, W. F. Long, J. N. McCall, V. B. McCallum, Jr., L. H. Nelson, K. E. Ratliff, J. B. Roberson, John Roberson, C. W. Spires, and R. N. Tapley [Group 3(a)]. W. T. Culpepper's case has already been tried by the Committee. He has been found guilty as charged, and has been ordered dismissed and discharged.

"During the ensuing period of time, July 6 through July 16, 1972, the following named firemen, in concert with the above named firemen, did plan and conspire with each other to join the above named firemen in the work stoppage and in their failure and refusal to return to their post of duty at the various city fire stations in response to lawful orders of their superior officers to do so, and the following named firemen did, in fact, without just cause, join the above named firemen in their work stoppage, and in their failure to return to duty after being lawfully ordered to do so by their superior officers. Further, the following named firemen, in addition, did conspire and plan with the above named firemen to incite, urge, coerce and threaten and the above named firemen did, in fact, incite, urge, coerce and threaten other city firemen to leave their posts of duty at the various city fire stations, and join them in the work stoppage: A. J. Bates, R. L. Branch, L. H. Burnley, A. B. Caldwell, H. L. Colbert, R. M. Donaldson, H. J. Duffey, J. H. Dunn, Jr., J. B. Dyes, R. N. Dyes, J. E. Evans, W. B. Hencely, B. A. Hulette, C. W. Hulette, B. E. Jackson, L. A. Jespersen, J. J. Maloy, J. R. Molton, R. T. Mullis, J. L. McCallum, C. C. Porter, J. B. Potts, E. H. Smith, C. R. Story, B. F. Suddeth, H. C. Tucker, W. L. Whitehead, L. R. Wood, and H. W. Yeomans [Group 3(b)].

"L. H. Burnley's and E. H. Smith's cases have already been tried by the Committee, they have been found guilty as charged, and have been ordered dismissed and discharged.

"Further, the following named firemen, during the period of time between July 6 and July 16, 1972, while not encouraging the aforementioned firemen, nor aiding or abetting or conspiring with them in their work stoppage, were caught up in the turmoil created by the activities of the aforementioned firemen and due to the mass confusion which existed as a result of various threats against intimidations of them and coercion of them by the aforementioned firemen without just cause, failed to report to their posts of duty as fire fighters at the various fire stations of the City of Macon in response to lawful orders of their superior officers to do so: C. R. Burnette, B. M. Busbee, T. R. Carroll, C. R. Doster, P. E. Hardy, B. J. Knight, V. B. McCallum, Sr., P. L. McCoy, G. H. Perish, V. L. Pettis, B. B. Reagin, B. S. Shouse, S. B. Tidwell, J. D. Bruce, K. C. Whitehead, B. E. Williams, F. A. Metcalf, C. W. Evenson, B. A. Cannon, B. R. Carstaphen, L. M. Salter, W. R. Maddox, P. H. Garrett, L. A. Jones, B. K. Schell, R. A. Powers, B. W. Dickson, J. J. Copeland, Julius Whitehead, J. R. Daniels, D. C. Lance, H. F. Giler, B. C. Peek, W. N. Stonecypher and M. E. Ward" [Group 3(c)].

Mr. Chairman, it is submitted that the facts, as outlined, support Mayor's charges that the following men are guilty of the charges preferred against them by the Mayor, to-wit: Wilful disobedience of orders, leaving station without just cause, neglect of duty and conduct subversive of good order and of the discipline of the Department in violation of Sec. 2–145, Paragraphs (b), (e), (i), and (*l*) of the 1962 Code of the City of Macon and striking in violation of Sec. 91 of the Charter of the City of Macon, as set forth in said Code (Ga.Laws 1951, p. 2399 et seq.) and should be dismissed and discharged from the Fire Department and from the employ of the City of Macon: . . [Group 3(a)].

and submitted to the Fire Committee on September 11, 1972, in the presence of counsel for the fire fighters. On the basis of these agreed upon facts, the City Attorney recommended that the fire fighters in Group 3(a) and 3(b) be dismissed and discharged and that those in Group 3(c) be reinstated and returned to duty following such period of suspension and under such conditions as may be ordered by the Committee.

After a recess the Fire Committee reconvened and announced its decision to sustain the charges against the fire fighters in Group 3(a) and 3(b) and to discharge them, and to return those in Group 3(c) to duty under certain conditions of loss of pay, promotion, and probation which are not in issue in this law suit.

### The Scene Shifts To The Federal Court

Appellants then sought redress for deprivation of their civil rights under § 1983, and from the adverse judgment

Mr. Chairman, it is also submitted that the facts, as outlined, support the Mayor's charges that the following named men are guilty of the charges preferred against them by the Mayor, to-wit: Wilful disobedience of orders, neglect of duty, and conduct subversive of good order and the discipline of the Department in violation of Sec. 2–145, Paragraphs (b), (i) and (*l*) of the 1962 Code of the City of Macon, and striking in violation of Sec. 91 of the Charter of the City of Macon, as set forth in said Code (Ga.Laws 1951, p. 2399, et seq.) and should be dismissed and discharged from the Fire Department and the employ of the City of Macon: . . . [Group 3(b)].

Further, Mr. Chairman, it is submitted that the conduct of the following named men, as outlined, did not amount to striking or to conduct subversive of good order and the discipline of the Fire Department, but did constitute neglect of duty and wilful disobedience of orders in failing to return to their post of duty when ordered to do so by their superior officers, without just cause, and they are thus guilty of the following charges preferred against them by the Mayor, to-wit: Wilful disobedience to orders and neglect of duty in violation of Sec. 20145, Paragraphs (b) and (i) of the 1962 Code of the City of Macon, and should be reinstated and returned to duty following such period of suspension and under such conditions as may be ordered by the Committee: . . . [Group 3(c)].

they make four contentions on appeal. First, as argued by appellants, the 17 discharged probationary employees (Group 1) were improperly deprived of a property or liberty interest without a hearing. Second, the individual hearings given to the three fire fighters in Group 2 and the joint hearing given to those in Group 3(a) and 3(b) should have been held *prior* to the suspension of the fire fighters involved. Third, the individual and joint hearings actually given to the suspended nonprobationary employees were not held before an impartial decisionmaker. And fourth, the abbreviated joint hearing which the 40 suspended nonprobationary fire fighters in Group 3(a) and 3(b) received actually *followed* the Committee's earlier decision to discharge them and thus did not meet the demands of due process.

### Probationary Fire Fighters

The 17 probationary fire fighters (Group 1) were summarily discharged

Mr. Chairman, I submit to the Committee for decision the cases against the firemen named in the foregoing statement upon the statement of facts which I have just read.

Mr. Russell X. Thompson represents all of the firemen named in the statement of facts. He is present before the Committee and most, if not all, of the firemen are also present. It will be in order at this time, if it pleases the Committee, for Mr. Thompson to make such statements to the Committee on behalf of his clients as he deems proper and appropriate.

MR. THOMPSON: Mr. Chairman and members of the Committee, on behalf of all of the firemen who have been charged with various offenses as outlined by Mr. Miller, we at this time wish to submit the facts, as the Committee has before it. We feel the Committee has the statement of facts, and they have gone to a great deal of pain and trouble in the investigation of the matter to determine what is fair and just. We, therefore, wish to submit the matter for the sound discretion of the Chair and the Committee. Mr. Chairman, on behalf of these firefighters, we would respectfully urge the Chair and the Committee to scrutinize each and every one of these men and find each and every one of them not guilty of the offenses that they've been charged. Thank you.

by Fire Chief Schaeffer 5 days after the strike began without any type of due process hearing. Before the requirements of procedural due process come into play, however, one must be deprived of an interest in "life, liberty, or property." The Supreme Court has now firmly established that a probationary teacher or federal employee, who has no reasonable expectation of continued employment while in the probationary status, has no property interest in his or her continued employment sufficient to call forth procedural due process when that employment is terminated. *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *See also Ring v. Schlesinger*, 1974, 164 U.S.App.D.C. 19, 502 F.2d 479. Cf. *Ferguson v. Thomas*, 5 Cir., 1970, 430 F.2d 852; *Pred v. Board of Public Instruction of Dade County, Fla.*, 5 Cir., 1969, 415 F.2d 851.

■ The ordinances of the City of Macon make clear that a probationary fire fighter does not become a member of the Fire Department—thereby benefiting from various employment guarantees, including the procedural safeguards listed at note 6, *supra*—until, among other requirements, he or she satisfactorily completes the prescribed period of training and serves satisfactorily in probationary status for 18 months. Thus, the probationary fire fighters, like their counterparts in teaching and in federal government, were not given a reasonable expectation of continued employment and were thus not deprived of a property interest when they were discharged by the City.

■ Nor are we persuaded that the discharged probationary fire fighters fall into that exception, acknowledged in *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558, which recognizes the need for notice and a hearing when government action disables a person from finding other employment or deprives him of his reputation, honor or integrity. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Kaprelian v. Texas Woman's Univ.*, 5 Cir., 1975, 509 F.2d 133; *Sims v. Fox*, 5 Cir., 1974, 505 F.2d 857 (en banc); *McDowell v. State of Texas*, 5 Cir., 1971, 465 F.2d 1342 (en banc) (Brown, C. J., concurring specially). It was clear that the probationary fire fighters were being discharged for participating in an illegal strike. The City did not proffer charges against them which might seriously harm their standing in the community nor accuse them of dishonesty or other conduct with moral implications. In the context of this illegal strike, the discharge of these probationary employees did not infringe upon their Fourteenth Amendment liberty interests. *See Lake Michigan College Federation of Teachers v. Lake Michigan Community College*, 6 Cir., 1975, 518 F.2d 1091, 1097.

In short, the ordinances of the City of Macon provided for no procedural safeguards in connection with the discharge of probationary fire fighters, and none were required by the Fourteenth Amendment. Cf. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

### *Nonprobationary Fire Fighters: No Prior Hearing*

■ The nonprobationary fire fighters (Group 2 and Group 3(a) and 3(b)) were suspended without any form of *prior* hearing. The City took this action in the course of an illegal strike which severely handicapped the firefighting ability of the City of Macon. The opportunity for a hearing required by due process must be given *before* the deprivation of a

property interest,[9] "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971).

■ In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), a majority of the Justices found that, even though the termination of a nonprobationary federal employee involved the deprivation of a significant property interest,[10] the required hearing could be given *after* the termination, since the government had a significant countervailing interest in the prompt discharge of deficient employees.[11] *See also Morgan v. Fletcher,* 5 Cir., 1975, 518 F.2d 236; *Davis v. Vandiver,* 5 Cir., 494 F.2d 830. Not only does the City of Macon share this interest in the efficient operation of its personnel system, but it suspended the appellant nonprobationary fire fighters in an emergency situation in an effort to restore the City's fire protection. Under these circumstances, the City was not required to hold the mandatory due process hearing prior to the suspension of the nonprobationary fire fighters.

### Bias Of Administrative Tribunal

Appellant nonprobationary fire fighters also assert that the Fire Committee was biased against them and had prejudged their cases, denying the three nonprobationary fire fighters who received individual hearings (Group 2) and the 40 nonprobationary fire fighters who received a joint hearing (Group 3(a) and 3(b)) before the Fire Committee a fair and impartial hearing as required by *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). These appellants assert that the Fire Committee *must* have been biased, since it actively investigated the status of the strike from its beginning and obtained information on individual striking fire fighters.

In *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court cautioned that some situations may present such a probability of bias on the part of the decisionmaker as to be constitutionally intolerable, specifically citing those cases in which the adjudicator has a pecuniary interest in the outcome or in which he has been the target of personal abuse or criticism by the party before him. But the Court continued, "the contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry." Id. at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 723. The Court went on to hold that a state examining board which conducted an investigation and decided that there was probable cause to conduct an adversary hearing to determine whether a physician's license should be revoked was not thereby rendered incapable of conducting the adversary hearing free from bias or prejudgment.

■ Even assuming the extent of the Fire Committee's investigative involvement asserted, we think that this case is not distinguishable from *Withrow.* Though the investigative evidence was overwhelming that certain fire fighters had participated in the illegal strike, there is no indication that the Fire Committee was not perfectly able to weigh countervailing evidence offered by the fire fighters to disprove or mitigate their own personal involvement. The good faith of the Fire Committee is demon-

---

9. In disposing of this claim, we assume, without deciding, that the suspension of these nonprobationary fire fighters deprived them of a property interest as would their permanent termination.

10. The opinions of Justices Powell, Blackmun, Douglas, Marshall and Brennan support this proposition.

11. This view was expressed by Justices Rehnquist, Burger, Stewart, Powell, and Blackmun.

strated by its determined effort to avoid reference to individual fire fighters during the negotiations with counsel for the fire fighters. Absent a finding of actual bias or prejudgment, the consecutive investigatory and adjudicative roles played by the Fire Committee, without more, does not present a constitutionally intolerable risk of a biased hearing. Cf. *Intercontinental Industries v. American Stock Exchange*, 5 Cir., 1971, 452 F.2d 935; *Lake Michigan College Federation of Teachers v. Lake Michigan Community College*, 6 Cir., 1975, 518 F.2d 1091.

### *The Joint Administrative Hearing: A Foregone Conclusion*

As a possible corollary to the charge of bias, appellants finally contend that the joint hearing received by the 40 nonprobationary fire fighters (Group 3(a) and 3(b)) on September 11, 1972, was not impartial and was no more than a barren ritual conducted after the decision had already been made as to which fire fighters would be discharged. We have already considered and rejected the assertion that the Fire Committee's investigative role must have prejudiced its adjudicative role.

We have detailed the course of negotiation by which counsel for the fire fighters sought to bargain for a definite number of reinstatements rather than risk the possible discharge of all the suspended fire fighters after individual hearings. The District Court correctly found that a negotiated statement of facts—distinct from the recommendation as to which fire fighters should be reinstated or discharged—was presented to the Fire Committee and that counsel for the fire fighters joined in the submission of this statement of facts. See note 8, *supra.* As the result of extensive negotiations with the Fire Committee, City Attorney Miller and Fire Chief Schaeffer, counsel for the fire fighters agreed that 35 of the 75 suspended fire fighters would be reinstated and further agreed that the decision as to *which* of the suspended fire fighters would be reinstated would be left up to the discretion of the Fire Committee, with advice from the City Attorney and the Fire Chief.

Under the circumstances, appellants cannot now be heard to complain that the Fire Committee consulted with the City Attorney and the Fire Chief and made its decision *prior* to the City Attorney's formal submission of the agreed statement of facts and his recommendation—which the Committee accepted and followed—at the joint hearing. To make a federal case out of action by the administrative tribunal at that stage and under those circumstances, the aggrieved fire fighters would have to demonstrate that on the facts agreed the ultimate conclusion was so arbitrary as to offend constitutional guarantees. Just as one has the right to waive a due process hearing, one also has the right to bargain for a particular kind of hearing, if done knowingly and voluntarily. Counsel for the fire fighters was an experienced negotiator and was perfectly aware of the tradeoff he negotiated: the certain reinstatement of 35 fire fighters for the loss of individual hearings on the merits.

The constitution is not infringed by holding the fire fighters to the bargain they struck.

Affirmed.