SOUTHERN OHIO COAL COMPANY,
Plaintiff,

v.

F. Ray MARSHALL, Secretary of Labor,
et al., Defendants.

No. C–2–78–1041.

United States District Court,
S. D. Ohio, E. D.

Nov. 6, 1978.

Alvin J. McKenna and D. Michael Miller, Alexander, Ebinger, Holschuh, Fisher & McAlister, Columbus, Ohio, for plaintiff.

James C. Cissell, U. S. Atty., and Nathaniel H. Speights, Asst. U. S. Atty., S. D. Ohio, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This is an action instituted under the provisions of the Federal Mine Safety Act of 1977, 30 U.S.C. § 801, et seq., and the Fifth Amendment to the United States Constitution. Plaintiff, the operator of underground coal mining facilities, seeks to enjoin the enforcement of an order of temporary reinstatement issued on September 12, 1978 by defendant Broderick, the Chief Administrative Law Judge of the Federal Mine Safety and Health Review Commission. On October 11, 1978 this Court issued a temporary restraining order, which was subsequently extended to October 31, 1978. This matter is now before the Court upon the government's motion to dismiss and the plaintiff's motion for a preliminary injunction. A hearing was held on plaintiff's motion and, based upon the evidence adduced at the hearing as well as the other materials presently before it, the Court now makes the following findings of fact and conclusions of law. Rule 52, Fed.R.Civ.Pro.

### Findings of Fact

Plaintiff Southern Ohio Coal Company owns and operates Meigs Mine No. 2, located in Meigs County, Ohio. This mine has fourteen working sections, each section consisting of a regular crew of nine to twelve men. A section foreman is responsible for the overall health and safety of the men in his section. One of the primary duties of a section foreman is to make regular safety inspections during his working shift. Additionally, it is his duty under step one of the grievance procedure in effect at the mine to attempt to resolve any safety complaints brought to him by any member of his crew. If he is unable to resolve the complaint, the foreman takes the matter to his supervisor. Until June 12, 1978, defendant Terry L. Hill was employed at Meigs Mine No. 2 as a section foreman.

When a section foreman is absent from duty during his work shift, a replacement foreman is removed from his job in another part of the mine to take the place of the absent foreman. The replacement foreman is usually unfamiliar with the crew, and has, as a general rule, less experience than the absent foreman.

Foremen at Meigs Mine No. 2 earn fifteen days per year cumulative paid sick leave. In exercising their sick leave rights, the foremen are expected to call and report the reason for their absence, either before their work shift or as soon as possible thereafter.

The personnel supervisor at Meigs Mine No. 2 testified that Hill had missed work on an intermittent basis for a period of months and, in April, 1978, he sent written notice to Hill warning him that his work record was unsatisfactory. Hill continued to miss work, and on June 2, he neither appeared

for work nor called in to report his absence. On June 7, Hill was discharged from his employment with the plaintiff, purportedly for excessive absenteeism.

Hill explained at the hearing that he understood the sick leave policy to extend to all absences, including absences for personal reasons. He explained that on June 2, he overslept and he admitted that he did not report his absence. His work record reflects that nearly all Hill's absences were charged against his accumulated sick leave, and only two absences were recorded as "unexcused." At the time of his discharge, Hill had approximately twenty-five days paid sick leave remaining to him.

During April, 1978, Hill's section maintained a high rate of productivity. In May, however, and for a period of months thereafter, production dropped markedly throughout the mine. After the April high, working conditions for Hill's section—as well as for other sections—worsened. Hill testified that insufficient methane detection equipment was available to him, but that when he reported this fact to his supervisor, he was told to continue work or else the company would find someone who would.

On June 19, 1978, Hill filed a complaint with the Secretary of Labor, claiming that he had been discharged because of his concerns over safety conditions in the mine. At about the same time, he also filed a claim for unemployment compensation with the State of Ohio. On August 30, a hearing was held on his unemployment claim. During the course of that hearing, Hill testified that he was suffering from a hernia condition that rendered him unable to perform his duties in the mine. His claim was denied on the ground that he was discharged for just cause. At the hearing before this Court, Hill explained that he had based his prior testimony upon a 1977 medical diagnosis.

Hill met with an inspector from the Mine Safety and Health Administration approximately three times between the time his discrimination complaint was filed and the order of reinstatement was issued. However, he never informed the inspector of his claimed medical condition.

On September 12, 1978 defendant Broderick issued an ex parte order of temporary reinstatement upon the Secretary's certification that Hill's complaint "was not frivolously brought." The order required Hill's physical reinstatement in the mine at his former position as a section foreman. After learning of Hill's possible hernia condition, however, the Secretary agreed to accept economic reinstatement until such time as Hill's medical condition was determined. Until the issuance of this Court's temporary restraining order, Hill was paid as a section foreman, although he did not work.

The results of one medical examination indicate that Hill does not suffer from a hernia condition and is in fact physically able to perform the duties of a section foreman. As of the time of the hearing before this Court, the parties were still awaiting the results of a second medical opinion.

Henry Lester, the general superintendent of plaintiff's Meigs Division, testified that physical reinstatement of Hill in the mine would have a negative impact upon the operation of the mine. In the event that Hill does suffer from a physical disability, his inability to properly perform his duties would pose a safety hazard in the mine. On the other hand, if Hill has no such disability, then his past absences establish his unreliability as an employee serving in a critical position. Lester further testified that Hill's reinstatement, whether physical or merely economic, serves to lower the morale of the other foremen working at Meigs Mine No. 2.

Upon his discharge, Hill received approximately $3,000.00 in severance and retirement pay from the plaintiff. Hill has been unable to find other employment, and his family has qualified for food stamps. From September 12 until the issuance of this Court's temporary restraining order, Hill received regular bi-monthly pay checks from the plaintiff amounting to approximately $1,300.00.

*Discussion*

The Federal Coal Mine Health and Safety Act of 1969 provided coal miners with certain rights in regard to safety and health in their working place. These rights were guaranteed by granting to miners discharged as a result of engaging in protected activities the right to be reinstated, with back pay, at the conclusion of an administrative process. Under the 1977 Act, these rights are expanded to provide *inter alia,* the temporary reinstatement of the miner pending administrative proceedings.

Under 30 U.S.C. § 815(c)(2), a miner who believes that he has been discharged from employment as a result of engaging in safety related activities in the mine may file a discrimination complaint with the Secretary of Labor. The Secretary may thereupon investigate the complaint and, if the Secretary finds that the complaint is "not frivolously brought," he may then apply to the Commission for an immediate order requiring the employer to reinstate the aggrieved miner pending a final order on the complaint. If the Secretary determines[1] that the miner has been discriminated against in violation of the Act, he must file a complaint with the Mine Safety and Health Commission and propose an order "granting appropriate relief." After notice to the alleged violator and opportunity for a hearing, the Commission "shall issue an order, based upon findings of fact, affirming, modifying, or vacating the Secretary's proposed order, or directing other appropriate relief." Any person adversely affected or aggrieved by an order of the Commission may obtain review of the order in the United States Court of Appeals for the circuit in which the violation is alleged to have occurred, or in the Court of Appeals for the District of Columbia Circuit. Section 816.

The interim procedural rules of the Commission provide for discretionary review of any Commission order upon certain specified grounds. 29 C.F.R. §§ 2700.51, 2700.58. If the petition for review is denied, the Administrative Law Judge's decision "shall become the final decision of the Commission unless the Commission orders review on its own motion under § 2700.59." 29 C.F.R. § 2700.58(i). Moreover, a Commission order granting the petition for discretionary review "shall automatically stay the effect of the Judge's decision." 29 C.F.R. § 2700.55.

The plaintiff in this action seeks not to review the merits of defendant Hill's discrimination complaint, but rather challenges the order of temporary reinstatement on both statutory and constitutional grounds. The plaintiff claims that the governmental defendants are without jurisdiction to consider Hill's discrimination claim because Hill is not a "miner" within the meaning of 30 U.S.C. § 815(c); that the failure to provide plaintiff a hearing prior to the issuance of the reinstatement order denied it due process of law; and that temporary reinstatement itself is unconstitutional under the due process clause.

The governmental defendants, on the other hand, have moved to dismiss the action, arguing that the Court is without jurisdiction to entertain this matter; that the plaintiff has failed to exhaust its administrative remedies; and that plaintiff has failed to establish irreparable harm. Because the plaintiff challenges the constitutional sufficiency of the administrative procedures followed with respect to defendant Hill's complaint, plaintiff's procedural claim and the defendants' exhaustion argument are necessarily related. Accordingly, analysis of the two issues must necessarily be likewise intertwined.

*Motion to Dismiss*

Just as the plaintiff's contentions are related to those of the defendants, the defendants' jurisdictional argument is closely related to their exhaustion argument. Underlying both of the defendants' arguments is the proposition that because the statutory framework establishes administrative proceedings ultimately terminating in judicial

---

1. Under § 815(c)(3), this determination must be made within ninety days of the receipt of the miner's complaint.

review in the Court of Appeals, this Court is without jurisdiction to proceed in this matter.

Because plaintiff's claims in this action draw into question the interpretation or application of the Act and the Constitution, this action is one arising under federal law. *See Gully v. First National Bank*, 299 U.S. 109, 114, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Accordingly, this Court would ordinarily have jurisdiction under 28 U.S.C. § 1331. The doctrine of exhaustion of administrative remedies was articulated by the United States Supreme Court as "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938).

The Supreme Court has also recognized, however, an exception to the general rule where it is alleged that the agency has acted in excess of its statutory jurisdiction. *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Plaintiff makes such an allegation in its contention that the defendants have acted in excess of agency jurisdiction in its inclusion of Hill, a section foreman, within the statutory definition of "miner." The term "miner" is defined in § 802(g) as "any individual working in a coal or other mine." Yet, as plaintiff aptly points out, § 802(e) defines as an "agent" of the mine operator "any person charged with responsibility for the operation of all or part of a coal or other mine *or the supervision of the miners in a coal or other mine.*" [Emphasis supplied.] Plaintiff also presents serious policy considerations in further support of its argument.

■ In this Court's opinion, the plaintiff's statutory claim does not fall within the purview of *Leedom v. Kyne, supra.* The determination of whether or not Hill is a "miner" for purposes of § 815 necessitates not merely interpretation of the statute, but also "the application of expertise by administrative bodies in resolving underlying issues of fact." *McGee v. United*

*States*, 402 U.S. 479, 486, 91 S.Ct. 1565, 1569, 29 L.Ed.2d 47 (1971). The factual issues underlying plaintiff's claim in this regard include the nature of Hill's duties as section foreman and his relationship in that position with the plaintiff. Resolution of these issues necessarily depends upon the specialized understanding in the agency's field of expertise. Accordingly, it is entirely appropriate to require plaintiff to exhaust its administrative remedies with respect to this claim.

The Court likewise concludes that it has no jurisdiction to resolve plaintiff's substantive due process claim that temporary reinstatement of a foreman under any circumstances is unconstitutional. Because resolution of this claim rests, in large measure, upon similar factual considerations, exhaustion of administrative remedies would avoid "important and difficult constitutional [decisions] devoid of factual context and before it [is] clear that [Hill is] covered by the Act." *W. E. B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967).

■ On the other hand, the Court does not believe that plaintiff must exhaust its administrative remedies with respect to its claimed denial of procedural due process by the agency's failure to afford it a hearing prior to issuing the order of temporary reinstatement. In reaching this conclusion, the Court is guided by the holding of the Supreme Court in *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). Although the issue of jurisdiction was not discussed in that case, the Court nevertheless exercised jurisdiction in that case and ruled on the merits of the plaintiffs' claim that the procedures followed by the Civil Rights Commission in investigating allegations of discrimination denied them due process.

This Court is convinced that its exercise of jurisdiction over this claim will not serve to undermine the important policy considerations supporting the general rule that a party must exhaust its administrative remedies prior to invoking judicial authority. Plaintiff claims that the very administra-

tive procedures by which it is forced to act, and which the defendants contend must be exhausted, work a present and continuing constitutional deprivation.

Under these circumstances, then, plaintiff clearly has no adequate administrative remedy to pursue in its attempt to resolve this claim. Indeed, requiring plaintiff to pursue the administrative procedure would necessarily constitute a virtual adjudication of its procedural claim. Moreover, the issues raised by this claim do not involve the specialized expertise of the agency, but rather, are peculiarly within the expertise of a court.

Accordingly, this Court concludes that plaintiff's procedural due process claim properly invokes this Court's jurisdiction.[2]

*Motion for Preliminary Injunction*

■ The Sixth Circuit has delineated the standards governing this Court in its determination as to whether or not plaintiff is entitled to preliminary injunctive relief:

[a] Whether the [plaintiff has] shown a strong or substantial likelihood or probability of success on the merits;

[b] Whether the [plaintiff has] shown irreparable injury;

[c] Whether the issuance of a preliminary injunction would cause substantial harm to others;

[d] Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977); *Ohio v. Callaway*, 497 F.2d 1235 (6th Cir. 1974); *North Avondale Neighborhood Ass'n. v. Cincinnati Metropolitan Housing Authority*, 464 F.2d 486 (6th Cir. 1972). *Cf. Securities and Exchange Comm'n. v. Senex Corp.*, 534 F.2d 1240 (6th Cir. 1976). Due process protections are applicable to administrative procedures that adjudicate, as well as to courts. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973);

*Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir. 1976). And those protections include "the right to support . . . allegations by argument, however brief; and, if need be, by proof, however informal." *Londoner v. Denver*, 210 U.S. 373, 386, 28 S.Ct. 708, 714, 52 L.Ed. 1103 (1908). *See also Ohio Bell Telephone Co. v. Public Utilities Comm'n.*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). *Cf. United States v. Florida East Coast R. Co.*, 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

■ The proceedings culminating in the issuance of the temporary reinstatement order were clearly adjudicatory, and plaintiff is entitled to some constitutional protection relative to it. *See Hannah v. Larche, supra*, 363 U.S. at 441, 80 S.Ct. 1502.

Having concluded that plaintiff was entitled to due process relative to the order of temporary reinstatement, the question remains as to what process was due. It is the government's contention that the existing administrative procedures established by the interim rules of the agency provide all the protection that is constitutionally required in connection with an order of temporary reinstatement. While it is clear that plaintiff will have full opportunity to be heard in subsequent proceedings, the issue now before this Court centers upon plaintiff's rights prior to the issuance of the order.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *citing Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The Supreme Court has set out three specific factors to be considered in determining whether the procedures followed in this action are constitutionally sufficient:

**2.** The defendants also base their motion to dismiss upon the ground that plaintiff has failed to establish irreparable harm. This issue will be discussed *infra* in connection with plaintiff's motion for a preliminary injunction.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge, supra*, 424 U.S. at 335, 96 S.Ct. at 903.

At stake here is the plaintiff's interest in not being compelled to employ in a particularly sensitive position (either physically or merely economically), a man whom it has previously discharged. Because it appears that a section foreman acts, in many respects, as the plaintiff's agent, rendering the plaintiff responsible for the foreman's actions, this interest is compelling. Consideration of the first factor outlined in *Eldridge*, then, would tend to support a requirement that an evidentiary hearing be held prior to adverse administrative actions.

Moreover, the existing procedures are, in this Court's opinion, essentially unreliable, and additional procedural safeguards would be of great value in minimizing the risk of erroneous deprivation of the plaintiff's interest. This conclusion is supported by evidence in the record indicating that the agency was unaware of Hill's claimed medical disability until after the order had been issued. Furthermore, because the parties sharply dispute the reason for Hill's discharge (and necessarily the conclusion that the complaint was "not frivolously brought"), "issues of witness credibility and veracity . . . are critical to the decisionmaking process." *Mathews v. Eldridge, supra*, 424 U.S. at 344, 96 S.Ct. at 907. Accordingly, the potential value of an evidentiary hearing prior to the issuance of the reinstatement order is, under the circumstances, great.

The third factor to be considered under the *Eldridge* analysis is the public interest, including the administrative burden associated with requiring an evidentiary hearing prior to the issuance of an order of temporary reinstatement. This Court is of the opinion that such burden, if indeed any exists, fails to outweigh the first two considerations. A factual investigation by an agency representative is in any event required under both the statute and the regulations. Moreover, considering the fact that nearly three months elapsed between the time Hill filed his complaint and the Administrative Law Judge issued the order, this Court can perceive no real harm resulting from any additional delay that may be caused by affording the employer an opportunity to present its version of the facts.

In sum, then, it is this Court's conclusion that the plaintiff was at least arguably entitled to an evidentiary hearing prior to the issuance of the order of temporary reinstatement. Accordingly, this Court must likewise conclude that the plaintiff has established a substantial likelihood of success on the merits of this claim.

■ The government strenuously argues that the plaintiff has failed to establish irreparable harm since the order of reinstatement merely requires that plaintiff pay a day's wages for a day's work.[3] Plaintiff, on the other hand, contends that if injunctive relief is withheld, it will be forced to reinstate in a delicate supervisory position an employee who may be seriously physically impaired, and who has in any event demonstrated unreliability in his work performance. The government's position in this regard is over-simplified. There is, on the present record, a real question as to Hill's physical ability to perform in a safe manner the duties required of a section foreman. Moreover, Hill's work record raises a serious question as to his reliability as an employee. Additionally, economic re-

---

**3.** The government lightly disposes of the issue of economic reinstatement by simply stating that economic reinstatement was agreed to by it only at the request of the plaintiff. This argument ignores the fact that the agency apparently regarded plaintiff's concerns as to Hill's ability to perform the duties of a section foreman as serious enough to render inappropriate Hill's immediate physical reinstatement.

instatement greatly magnifies the harm suffered by the plaintiff, both because of the obvious economic loss suffered by the plaintiff and because of the effect such a situation must necessarily have upon plaintiff's other employees. It goes without saying, of course, that all these factors constitute harm above and beyond that suffered by the plaintiff as a result of what would appear to be a deprivation of its constitutional right to due process.

Were a preliminary injunction to be issued, the party most immediately harmed would of course be Terry Hill himself, since the payments made available to him pursuant to the September 12 order of temporary reinstatement would terminate. While this Court is not insensitive to his economic plight, nor to that of his family, the Court would expect that a hearing complying with the requirements of due process could be afforded the plaintiff within a relatively short time. Should the evidence adduced at that hearing support a decision of temporary reinstatement, of course, he could expect to be placed back on the plaintiff's payroll. In any event, Hill would be entitled under the Act to back pay should he ultimately prevail on the merits of his discrimination complaint.

Because plaintiff's claim involves an alleged deprivation of a constitutional right and, further, because that claimed deprivation can be cured in a relatively short time, the Court does not believe that the public interest would be disserved by requiring the defendants to afford the plaintiff an opportunity to be heard prior to issuing an order of reinstatement, if such order is found to be appropriate.

In short, the Court determines that the plaintiff's motion for a preliminary injunction is meritorious.

### Conclusions of Law

This Court has jurisdiction under 28 U.S.C. § 1331 over plaintiff's procedural due process claim.

The plaintiff has shown a strong or substantial likelihood or probability of success on the merits of this claim.

The plaintiff has shown irreparable injury.

The issuance of a preliminary injunction would not cause substantial harm to others.

The public interest would be served by the issuance of a preliminary injunction.

WHEREUPON, the Court determines that the defendants' motion to dismiss is in part meritorious and in part without merit. The plaintiff shall be required to exhaust its administrative remedies with respect to its claim that Terry L. Hill is not a "miner" within the meaning of 30 U.S.C. § 815(c), and with respect to its claim that the temporary reinstatement of Terry L. Hill is unconstitutional under the due process clause. These claims are hereby DISMISSED from this action. However, plaintiff shall not be required to exhaust its administrative remedies with respect to its claim that the failure to provide it a hearing prior to the issuance of the temporary reinstatement order of September 12, 1978 denied it due process. As to this claim, defendants' motion to dismiss is DENIED.

The Court further determines that plaintiff's motion for a preliminary injunction is meritorious and it is therefore GRANTED.

IT IS HEREBY ORDERED THAT the reinstatement of Terry L. Hill be enjoined, and that the defendants, F. Ray Marshall, the Federal Mine Safety and Health Review Commission, and James A. Broderick, Acting Chief Administrative Law Judge, their officers, agents, employees, and all other persons associated with or acting in concert with them be enjoined from proceeding, directly or indirectly, in any manner, to enforce the order of temporary reinstatement issued on September 12, 1978 by the Acting Chief Administrative Law Judge in the case of Secretary of Labor, et al., on behalf of Terry L. Hill v. Southern Ohio Coal Company, Docket No. CD78–106, or Docket No. VINC 78–464, unless and until the plaintiff, Southern Ohio Coal Company, has been afforded notice and opportunity to be heard with respect to the issue of the temporary reinstatement of Terry L. Hill.

Nothing in this order shall preclude further proceedings upon the complaint of Terry L. Hill against Southern Ohio Coal Company and filed with the Secretary of Labor pursuant to 30 U.S.C. § 815(c)(2), provided, however, that Southern Ohio Coal Company shall be afforded notice and opportunity to be heard prior to the issuance of any order requiring the immediate reinstatement of Terry L. Hill pending final order on that complaint.

The bond previously set in this action shall continue in full force and effect.

This order shall continue in effect until the final determination of this case or until further order of the Court.