**ROADWAY EXPRESS, INC., a Delaware corporation,**

v.

**Raymond J. DONOVAN, Secretary of Labor; Alan C. McMillan, Regional Administrator, Region Four, United States Department of Labor.**

Civ. A. No. C85–997A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 11, 1985.

John B. Gamble, Jr., Fisher & Phillips, Atlanta, Ga., for plaintiff.

J. William Boone, Asst. U.S. Atty., Atlanta, Ga., James L. Stine, David E. Jones, U.S. Dept. of Labor, Atlanta, Ga., for defendant.

## ORDER

TIDWELL, District Judge.

The above-styled action is presently before the court on the plaintiff's motion for a temporary restraining order or for a preliminary injunction to order the defendants to withdraw that portion of the Secretary of Labor's preliminary order which requires the plaintiff to reinstate previously discharged employee Jerry W. Hufstetler. The plaintiff contends that the preliminary order is unconstitutional because it violates the plaintiff's right to procedural due process as guaranteed by the Fifth Amendment to the United States Constitution. After a hearing the parties have agreed that the present motion be treated as a motion for preliminary injunctive relief.

Prior to his dismissal on November 22, 1983, Jerry Hufstetler worked as a driver for the plaintiff. He was dismissed for allegedly intentionally creating a breakdown of his vehicle in order to collect compensation for the time he spent awaiting repair of the vehicle. Five days later Hufstetler filed a grievance, alleging that he had been discharged without just cause, in violation of the National Master Freight Agreement ("NMFA"). A NMFA arbitration panel considered the testimony presented by both Hufstetler and the plaintiff. The panel was composed of an equal number of representatives from a company and a union, none of which was a representative of the plaintiff. The panel rejected Hufstetler's claim that he had been dismissed in retaliation for his reporting of safety violations and determined that he had committed an act of dishonesty.

Subsequently Hufstetler contacted the Department of Labor and claimed that he had been dismissed for reporting safety violations, in violation of the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 2305. The Secretary then conducted an investigation and determined that there was reasonable cause to believe that Hufstetler's complaint had merit. On January 21, 1985, the Secretary issued a preliminary

order that required the plaintiff, *inter alia,* to pay backpay and to reinstate Hufstetler.

The plaintiff contends that the Secretary's preliminary order, issued pursuant to 49 U.S.C. § 2305(c)(2)(A), violates its right to procedural due process and causes the plaintiff to experience irreparable harm. Section 2305(c)(2)(A) provides that after the Secretary has issued a preliminary order either the employee or the employer within thirty days may file objections to the preliminary order and request a hearing, which is to be "expeditiously conducted." The statute specifically states that the request for a hearing does not stay that portion of the preliminary order that provides for reinstatement of an employee. After the conclusion of the requested hearing, the Secretary is to issue a final order within one hundred and twenty days.

■ To be entitled to preliminary injunctive relief, the movant must prove four elements: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) the movant will suffer irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. *See Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984). The requirement that the movant make a showing that there is a substantial likelihood of prevailing on the merits does not mean that the movant must actually succeed on the merits. *See Johnson v. United States Department of Agriculture,* 734 F.2d 774, 782 (11th Cir.1984). The issue is "likelihood" of success. *Id.*

■ "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "At a minimum, due process assures notice and a meaningful opportunity to be heard before a right or interest is forfeited." *Johnson,*

734 F.2d at 782. In *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903, the United States Supreme Court stated that three factors should be considered in determining the scope of due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The balancing test outlined in *Mathews* requires a court to consider various factors. Although due process generally requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest, a deprivation is not unconstitutional if the "potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978). Deprivation is also permissible if it is necessary to prevent imminent danger to the public. *See Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 300, 101 S.Ct. 2352, 2372, 69 L.Ed.2d 1 (1981); *Burnley v. Thompson,* 524 F.2d 1233, 1241 (5th Cir.1975).

Although no appellate court has examined the constitutionality of 49 U.S.C. § 2305(c)(2)(A), a federal district court has considered the constitutionality of regulations similar to the statute in the present case. *See Southern Ohio Coal Company v. Donovan,* 593 F.Supp. 1014, 1022–24 (S.D.Ohio 1984) ("Southern Ohio"). In *Southern Ohio* an employer challenged the constitutionality of procedures employed by the Mine and Health Review Commission, 29 C.F.R. §§ 2700 *et seq.* The employer contended that it was deprived of

procedural due process when the Commission issued an *ex parte* order reinstating a discharged coal miner who had been dismissed for excessive absenteeism and who had alleged that he was discharged in violation of federal mine safety laws. The challenged regulations provided that when the Secretary issues an order of temporary reinstatement the employer may request a hearing and that a judge is to hold the requested hearing within five days. After considering the constitutionality of the regulations, the court declared that a hearing provided to an employer after five days of compelled reinstatement failed to meet the requirements of procedural due process, as articulated by the Supreme Court in *Mathews*. In an earlier decision involving the same parties, the court had granted injunctive relief to the employer who sought to enjoin enforcement of the order requiring reinstatement. *See Southern Ohio Coal Company v. Marshall*, 464 F.Supp. 450, 456 (S.D.Ohio 1978).

■ For relief to be proper in the present case, the plaintiff must satisfy the four elements of preliminary injunctive relief. The court will consider the elements seriatim.

### 1. Likelihood of Success on the Merits

The plaintiff's challenge to the constitutionality of 49 U.S.C. § 2305(c)(2)(A) requires this court to consider the three factors articulated by the Supreme Court in *Mathews*: the private interest affected by the government's action, the risk of erroneous deprivation, and the government's interest. 424 U.S. at 335, 96 S.Ct. at 903. In determining the plaintiff's interest, the court recognizes that property interests "are not created by the Constitution, [but rather] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Arnett v. Kennedy*, 416 U.S. 134, 151, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974), quoting *Board of Re-*

*gents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The plaintiff has an important interest in not being compelled to reinstate an employee that was dismissed for dishonest conduct; that was determined by an arbitration panel, as provided by the contract between the plaintiff and its employees, to be justly dismissed; that could cause the plaintiff to be subject to further acts of dishonesty; and that might cause an innocent employee to be replaced. The plaintiff has an interest in upholding the arbitration provision of its contract and in protecting its business by promptly discharging "deficient employees." *Burnley*, 524 F.2d at 1241. *See also Southern Ohio*, 464 F.Supp. at 456 (employer has a compelling interest in not reinstating person in supervisory position).

There is also a clear risk of erroneous deprivation of the plaintiff's interest in protecting its business. In the present case, the Secretary of Labor conducted an investigation, which included an examination of the plaintiff's written statement of its view of the facts. The names of the people that the Secretary questioned were not made available to the plaintiff. In a case such as this one, where the employee claims that he was dismissed in retaliation for reporting safety violations and where the employee was determined to have acted dishonestly, an evidentiary hearing prior to compelled reinstatement would clearly lessen the risk of erroneous deprivation because the credibility and veracity of the witnesses would be determined. *See generally Mathews*, 424 U.S. at 344, 96 S.Ct. at 907.

The government's interests in protecting employees from retaliation for the reporting of safety violation and in protecting the public by the promotion of safety would not be impaired by requiring that a hearing be conducted prior to reinstatement. Although this court recognizes that the findings of an arbitration board that are not appealed are not to be given res judicata or collateral estoppel effect [*see McDonald v. City of West Branch, Michigan*, —— U.S. ——, 104 S.Ct. 1799, 1802, 80 L.Ed.2d 302 (1984)], the process afforded the plaintiff

and the employee during arbitration is significantly more expansive than the process afforded by the Secretary during his investigation. In addition, the government does not incur any greater burden by being required to hold a hearing prior to deprivation because § 2305(c)(2)(A) already requires it to "expeditiously" conduct the requested hearing. Furthermore, there is no imminent danger to the public requiring the plaintiff to be deprived of its right to procedural due process. The decision of the arbitration panel, however, suggests that there is a clear risk of erroneous deprivation.

After considering the three factors for determining the scope of due process required by *Mathews,* the court finds that the plaintiff has shown a substantial likelihood of success on the merits of its claim attacking the constitutionality of 49 U.S.C. § 2305(c)(2)(A).

### 2. Irreparable Harm

The plaintiff maintains that it will incur irreparable harm, harm that cannot be remedied by an award of monetary damages. The plaintiff contends that even if the Secretary determines after a hearing that Hufstetler was properly dismissed it will have been denied not only its right to procedural due process, but it will have also experienced interference with its collective bargaining agreement, disruption in its business caused by low morale and the layoff of an innocent employee, and apprehension of further acts of dishonesty. The harm that the plaintiff would be exposed to if an injunction were not granted would clearly be irreparable under the circumstances of this case.

### 3. Comparative Harm

The plaintiff argues that the harm caused by compelled reinstatement is greater than any harm that the defendants and Hufstetler would experience if a preliminary injunction were granted. Although the Secretary does have an interest in upholding the validity of statutes designed to promote safety, the court recognizes that the requirement of a hearing prior to ordered reinstatement would none-theless protect the defendants' interest in promoting safety. The harm experienced by the plaintiff, however, is much greater because reinstatement would adversely affect its business, as discussed above, and only injunctive relief can adequately protect the plaintiff's interest, in contrast to Hufstetler's interest, which can be protected by an award of backpay and other benefits if the decision of the Secretary is favorable to him.

### 4. Public Interest

The plaintiff contends that the issuance of a preliminary injunction would not be adverse to the public interest because the granting of the injunction does not undermine the promotion of safety, but rather only requires the government to conduct its hearing prior to compelling reinstatement. The plaintiff maintains that the burden on the government to conduct the requested hearing prior to the ordering of reinstatement is minimal, but the burden on businesses forced to reinstate employees dismissed for dishonesty is great. By requiring a hearing prior to compelling reinstatement, the court would be protecting both the public's interest in safety and in promoting the plaintiff's business interests. In considering the facts of this case, the court finds that the issuance of a preliminary injunction would not be adverse to the public's interest.

In conclusion, the court finds that the plaintiff has proved the four elements necessary for the issuance of a preliminary injunction. Although the court is not insensitive to Hufstetler's economic status as a result of the awarding of injunctive relief, it nevertheless believes that the particular circumstances of this case make such an award equitable as well as legally necessary.

The defendants, and any of their officers, agents and anyone acting in active concert therewith, are hereby restrained and enjoined from enforcing that portion of the Secretary's preliminary order of January 25, 1985 which requires the plaintiff to temporarily reinstate Hufstetler. The plaintiff is hereby required as a condition

of the above restraint to post a bond in the penal sum of $30,000.00 with good security, said bond to secure the payment of any and all damages that may accrue to any party as a result of the erroneous issuance of this order. The restraint imposed herein shall not become effective unless and until said bond is posted and approved as to form and security by the clerk of this court.