**ZEIGLER COAL COMPANY, Plaintiff,**

**v.**

**F. Ray MARSHALL, Secretary of Labor, et al., Defendants.**

**Civ. No. 80–4494.**

United States District Court,
S. D. Illinois.

Dec. 16, 1980.

Charles D. Winters and John S. Brewster, Winters, Brewster, Brown & Permar, Marion, Ill., Alvin J. McKenna and D. Michael Miller, Alexander, Ebinger, Fisher, McAlister & Lawrence, Columbus, Ohio, J. Halbert Woods and John J. Adams, Zeigler Coal Co., Des Plaines, Ill., for plaintiff.

James R. Burgess, Jr., U. S. Atty., East St. Louis, Ill., Frederick W. Moncrief, U. S. Dept. of Labor, Arlington, Va., for defendants.

## ORDER

FOREMAN, Chief Judge:

Plaintiff, Zeigler Coal Company, has brought this action seeking a preliminary injunction or in the alternative, a temporary restraining order. The basis of Zeigler's claim for relief lies in its allegations of due process deprivations and the constitutional invalidity of 30 U.S.C. § 815(c), if not facially, at least as applied to Zeigler. These contentions are more fully developed below.

### I.

The relevant facts are as follows:

1. Plaintiff, Zeigler Coal Company, is an Illinois corporation engaged in the business of underground mining operations. The mine here involved is its No. 11 Mine in Randolph County, Illinois.

2. On or about December 21, 1979, defendant Gene Hand, who was, prior to that date, a full–time employee of Zeigler, was discharged for insubordination and poor work performance.

3. Mr. Hand soon thereafter filed a complaint with the Mine Safety and Health Administration [1] (hereinafter MSHA) alleging that his firing was discriminatory, and, therefore, unlawful. In support of this averment, Hand offered his account of the incidents which he felt contributed to his termination.[2]

---

[1] Mr. Hand's complaint was filed pursuant to Section 105(c) of the Federal Mine Safety and Health Act of 1977; 30 U.S.C. § 801, *et seq.*

[2] The following letter was submitted and bears Mr. Hand's signature:

I was employed as a miner at the Zeigler No. 11 Mine, Zeigler Coal Company as a foreman. On November 5, 1979, I was put in charge of recovery work of getting machinery out of a squeezed section at Zeigler No. 11 Mine on the second shift. I had four men assigned to me to do this work. We were on this recovery work weekends and holidays and overtime up to four hours every night for two weeks. Upon completion of the job the stress and strain of this hazardous work put me under a doctor's care from December 3rd to December 9th, 1979. I

4. By letter dated February 19, 1980, MSHA advised Zeigler of Hand's claim. This letter also stated that MSHA had commenced investigation of the claim as required by statute.[3]

5. On May 19, 1980, the Secretary of Labor filed an application for temporary reinstatement of Gene Hand in the position from which he was terminated by Zeigler. The application contained a finding by MSHA for the Secretary of Labor that Hand's claim was "not frivolously brought."[4] Defendant James A. Broderick, who is the Chief Administrative Law Judge

(hereinafter, the "ALJ") for the U. S. Department of Labor, entered an order on May 20, 1980, temporarily reinstating Hand, effective immediately. The ALJ's order noted that the Secretary's finding was not facially arbitrary or capricious.

6. Zeigler then requested hearing on the reinstatement, as was its right pursuant to 29 C.F.R. § 2700.44 (Revised as of July 1, 1979).[5]

7. The hearing requested by Zeigler was convened on June 9, 1980, in St. Louis, Missouri, Judge Broderick presiding. The

---

am still taking medication from this condition resulting from this stress and strain. I had certain procedures to abide by from the Federal and State agencies on this recovery work. After completing this work, the Federal and State agencies were pleased with the job I did. On December 21, 1979, I was in charge of Unit 3, 1st West off Main South crew. There were 14 men in this crew. This section was having problems with short roof bolting and torqueing below and above normal range. I had a safety meeting with the crew on this condition. The section had just been bolted up on the second shift of December 20, 1979. Several bolts were short pinned and under torque range and the crew was upset with me over this condition. My main concern was complying with the approved roof control plan and the safety of the miners. I instructed the roof bolters as to where and how this affected area was to be supported and the procedure that was to be followed. This work was in progress when the Mine Superintendent came on my working section. Several miners approached him (the superintendent) on the torqueing of the roof bolts. After this meeting with the miners, he (the superintendent) gave me an order to assign one man to torque the roof bolts. This caused confusion among all the miners on the section. This section had had two massive falls above the anchorage zone of the roof bolts and the Mine Safety and Health Administration was raising hell with the operator for improper short bolting. I was trying to prevent this and make sure all roof bolts used for roof support were in adequate anchorage. I told the Superintendent that I had signed the preshift examiners report and that I was responsible for the safety of the miners on this working section. Since the torqueing of the roof bolts was the roof bolter's and my responsibility, I felt that by assigning any *unqualified* miner to this task would be a violation of our approved roof control plan. *I then asked the Superintendent to leave the section.* The roof control was very poor at this mine. The roof bolters continually installed short roof bolts for permanent sup-

ports and did not anchor in the strongest strata. This practice has caused several roof falls making miners feel unsafe with roof bolting as roof support. *The Superintendent interfered with my safety as well as other miners on the section.* The miners on the section notified him of this danger. I instructed the roof bolters to anchor bolts in at least 12 inches of limestone. He still maintained this wasn't necessary. When the shift was completed, I was summoned to the Superintendent's office and discharged for insubordination. I feel like I have been discriminated against by trying to comply with Federal Laws and Regulations. Therefore, I am asking to be reinstated to my Forman position and to be made whole. Since my discharge I have tried to gain employment with other coal companies. I know by my contacts that I have been blackballed by officers of Zeigler Coal Company and discriminated against. (Emphasis original)

3. 30 U.S.C. § 815(c)(2) states in pertinent part: "Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate."

4. 30 U.S.C. § 815(c)(2) states in pertinent part: ". . . if the Secretary finds such complaint was not frivolously brought, the Commission, on an expedited basis upon application of the Secretary, shall order the immediate reinstatement of the miner pending final order on the complaint."

5. 29 C.F.R. § 2700.44 states in part: "If the person against whom relief is sought requests a hearing on the order, a Judge shall, within 5 days after the request is filed, hold a hearing to determine whether the Secretary's finding was arbitrarily or capriciously made. The Judge may then dissolve, modify or continue the order."

ALJ concluded that the Secretary's decision regarding the frivolousness of Hand's complaint was not arbitrarily or capriciously made.

In addition to the above mentioned motion for injunctive relief filed by Zeigler, the following issues are before the Court for disposition:

A. Zeigler's assertion that defendants are without jurisdiction to consider Hand's claim of discrimination because Hand is not a "miner" within the meaning of 30 U.S.C. § 815(c).

B. Defendants' claim that this Court is without jurisdiction to decide Zeigler's request for injunctive relief. This is contained in defendant Federal Mine Safety and Health Commission's Motion to Dismiss.

The latter mentioned disputes will be addressed prior to proceeding to Zeigler's request for injunctive relief.

## II.

A. *Defendants' jurisdiction to consider Hand's claim of discrimination.*

■ 30 U.S.C. § 815(c) protects "[a]ny miner or applicant for employment or representative of miners ..." who believes he has been discharged or reprimanded in violation of the Act. Zeigler has maintained that Hand, who is admittedly a section foreman,[6] is not a "miner" as contemplated by the Act and as such has no right to redress through its provisions.

The law is clear that a determination regarding Mr. Hand's status as a "miner" envisioned by the Act is properly left to agency expertise. *In the Matter of Sauget Industrial Research and Treatment Association,* 477 F.Supp. 88, 90 (S.D.Ill.1979). Following MSHA's investigation of Hand's complaint, an application for his temporary reinstatement was submitted. Paragraph 3 of that application contains the administrative finding that Hand was a "miner" as defined in Section 3(g) of the Act, 30 U.S.C. § 802(g).

Even if this Court felt the administrative characterization of Hand as a "miner" within the purview of the Act was so arbitrarily made as to require reversal, it would be precluded from disturbing the agency ruling by 30 U.S.C. § 816(a)(1). That subsection specifically designates review of factual determinations to the Court of Appeals for the district in which the violation is alleged to have occurred or in the U. S. Court of Appeals for the District of Columbia. A person aggrieved by an MSHA Review Commission ruling has 30 days in which to file its objections in the appropriate Court of Appeals. In view of this Court's inability to comment on Hand's status as a "miner" and the passage of more than 30 days since MSHA's findings, it can only be concluded that the defendants' jurisdiction to consider Hand's complaint is unassailable.

B. *Defendants' claim that this Court lacks jurisdiction to decide Zeigler's Motion for Injunctive Relief.*

As noted above, § 816(a)(1) mandates that review of MSHA orders is solely with Circuit Courts of Appeal. Defendants suggest, therefore, that Zeigler's only forum in this matter would have been the Court of Appeals for the Seventh Judicial Circuit. This Court does not agree with defendants.

The intent embodied in the legislative history of MSHA[7] viewed in conjunction with restraints generally placed upon the scope of an administrative body's adjudicatory functions compels determination that jurisdiction to decide Zeigler's due process allegations lies properly in this Court.

Under § 816(a)(1), appellate courts are limited in their scope of review to those determinations of the Commission which appear of record. Even then, a court of appeals may not interpose its own judgment regarding the facts presented, but is

---

6. See Mr. Hand's letter which is set out in footnote 2 of this opinion.

7. *See,* 3 *U. S. Code Congressional and Administrative News,* 3401, *et seq.* (95th Congress, 1st Session, 1977).

restricted to ruling whether the Commission's decision is based upon substantial evidence of the record as a whole. The case of *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950), is cited as a guideline. It appears to this Court that the restrictions on judicial review were not implemented for any reason other than to foster two paramount tenets of MSHA; those being minimal judicial interference with the administrative fact finding process and expeditious handling of claims under the Act. To hold that Zeigler's due process claims are within the restrictions of § 816(a)(1) would be wholly inconsistent with MSHA's expressed purposes.

In addition, a curious situation would develop if the Court were to rule with defendants on the issue of jurisdiction. It is well established that as a general rule, federal administrative agencies have no power to pass upon the constitutionality of administrative or legislative action. *Spiegel, Inc. v. F. T. C.*, 540 F.2d 287, 294 (7th Cir. 1976). Resolution of Zeigler's due process claim would then be first dealt with in the Seventh Circuit Court of Appeals. This is, of course, untenable as it violates both the letter and intent of MSHA. Under the Act, judicial review of Commission rulings is restricted to the record. When judicial review of agency action is statutorily created, the court's jurisdiction with respect to such review extends as far and no further than the statute authorizes. *S. E. C. v. Louisiana Public Service Commission*, 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed.2d 897 (1957); *Martin Marietta Corporation v. FTC*, 376 F.2d 430 (7th Cir. 1967).

Accordingly, this Court knows of no reason why it should not entertain Zeigler's due process claim.

### III.

As noted above, Zeigler's motion for injunctive relief is predicated upon assertions that it was denied fundamental due process at various stages of the Commission investigation and hearings regarding Mr. Hand's claim that he was terminated in violation of 30 U.S.C. § 815(c)(1). It is important to note at this juncture that a final decision on the merits of Mr. Hand's claim has not been conducted. That is scheduled for February, 1981. Zeigler's protest centers on the *ex parte* nature of Hand's temporary reinstatement pursuant to § 815(c) and the manner in which the post–reinstatement hearing held pursuant to 29 C.F.R. § 2700.44, transpired.

The Court does not feel a lengthy reiteration of the facts will be necessary or helpful.

Since the Court has detected no substantial deviations from statutory mandate committed by defendants in the processing to date of Mr. Hand's claim, such scrutiny would obfuscate the real issue. That issue is whether the temporary reinstatement procedures and subsequent review hearings created by 30 U.S.C. § 815(c) violate the due process requirements of the Fifth Amendment to the United States Constitution. This Court thinks not.

To understand properly the problem at hand, it is necessary to examine the legislative history of the Federal Mine Safety and Health Act of 1977 in conjunction with the concept of due process.

The mining of coal and other minerals as well as its concomitant hazards have long been the subjects of legislative concern. The Federal Mine Safety and Health Act Amendments Act of 1977 ["the Act"] represents the latest congressional reaction to the series of tragic disasters which have occurred annually in our nation's mines. A primary objective of the Act is to facilitate claims against noncompliant mine operators and encourage individual miners to aid the enforcement of safety regulations without fear of reprisal. The provision of which Zeigler complains, 30 U.S.C. § 816(c), is so designed.

The thrust of § 816(c) is clear to this Court. An individual miner may freely demand compliance with safety regulations in the mine secure in the knowledge that any actions against him affecting his job security which even suggest retaliation will be

dealt with on an expedited, informal basis, and most importantly, he will be restored to his livelihood pending final hearing of the matter.

The mine operator is afforded some protection in that a miner will not be reinstated until there is a determination that his claim of discrimination was "not frivolously brought." The respondent mine operator may also request a hearing pursuant to 29 C.F.R. § 2700.44 at which a determination must be made by an administrative law judge that the "not frivolously brought" finding was not in itself arbitrary and capricious.

Zeigler contends that procedural due process requires a full evidentiary hearing *prior* to issuance of a temporary reinstatement order. Zeigler also feels that due process was further denied at the June 9, 1980 hearing to challenge Hand's reinstatement. More specifically, Zeigler complains of the limited scope of the hearing at which defendant Chief Administrative Law Judge Broderick continued the reinstatement order. It must be emphasized at this point that the Court's ruling on these matters is strictly limited to the due process aspects of Zeigler's claims. To consider a broader range of issues is prohibited by the jurisdictional grant to courts of appeal in § 816(a)(1).

This Court has previously held that due process is a flexible concept with its requirements depending on competing interests. *Bono v. Saxbe*, 450 F.Supp. 934 (Ce.D. Ill.1978); citing, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Broadly stated, the competing interests here are Zeigler's right to operate its business free from unnecessary and arbritrary government interference and the governmental objective of enforcing the provisions of the Federal Mine Safety and Health Act of 1977. A narrower issue embracing Zeigler's grievances regarding the timing and scope of hearings to review Commission orders is also presented.

Both the United States Supreme Court and Seventh Circuit Court of Appeals have confirmed that "Congress has broad lati-

tude to readjust the economic burdens of the private sector in furtherance of a public purpose. Only if Congress legislates to achieve its purpose in an 'arbitrary and irrational way' is due process violated." *Nachman Corp. v. Pension Benefit Guarantee Corp.*, 592 F.2d 947, 958 (7th Cir. 1979); citing, *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); and, *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The Seventh Circuit, in *Nachman*, went on to outline factors which should guide courts in assessing the "rationality" standard in cases such as now before the Court. It stated:

"Rationality must be determined by a comparison of the problem to be remedied with the nature and scope of the burden imposed to remedy that problem. In evaluating the nature and scope of the burden, it is appropriate to consider the reliance interests of the parties affected, *Allied Structural Steel Co.*, 438 U.S. 234, 98 S.Ct. 2716 [57 L.Ed.2d 727]; *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1080–81 (1st Cir. 1977); whether the impairment of the private interest is effected in an area previously subjected to regulatory control, *Allied Structural Steel Co.*, 438 U.S. 234, 98 S.Ct. 2716 [57 L.Ed.2d 727]; *Federal Housing Administration v. The Darlington, Inc.*, 358 U.S. 84, 91, 79 S.Ct. 141 [146], 3 L.Ed.2d 132 (1958); the equities of imposing the legislative burdens, *Alton Railroad*, 295 U.S. [330] at 354, 55 S.Ct. 758 [at 764, 79 L.Ed. 1468]; *Turner Elkhorn Mining*, 428 U.S. [1] at 19, 96 S.Ct. 2882 [at 2894, 49 L.Ed.2d 752], and the inclusion of statutory provisions designed to limit and moderate the impact of the burdens. *W. B. Worthen Co.*, 292 U.S. [426] at 434, 54 S.Ct. 816 [at 819]; *Allied Structural Steel Co.*, 438 U.S. 234, 98 S.Ct. 2716 [57 L.Ed.2d 727]. It must be emphasized that although these factors might improperly be used to express merely judicial approval or disapproval of the balance struck by Congress, they

**1332**

must only be used to determine whether the legislation represents a rational means to a legitimate end."

*Nachman v. Pension Benefits Guaranty Corp., supra*, at 960.

There appears to be little question that encouraging miners to report without hesitation unsafe conditions in the mines is a legitimate governmental goal. The Court is also satisfied that the procedures complained of by Zeigler are a rational means of achieving that goal.

The government's power to order temporary reinstatement is not carte blanche. Although a petitioner for reinstatement is not faced with a difficult burden of proof, he must nevertheless state a claim from which a reasonable inference of discrimination may be made. This is entirely consistent with the legislative purpose interpreted by this Court.

The respondent coal company is not left totally in the cold. It is fully advised of a miner's claims at the inception of MSHA's investigation. If reinstatement is ordered, the coal company may request a hearing pursuant to 29 C.F.R. § 2700.44. That the hearing does not occur until after reinstatement does not, as Zeigler contends, require a finding of constitutional infirmity in light of the valid governmental interests at stake. *Navato v. Sletten*, 560 F.2d 340, 345 (8th Cir. 1977); citing, *Board of Regents v. Roth*, 408 U.S. 564, 570 n.7, 92 S.Ct. 2701, 2705 n.7, 33 L.Ed.2d 548 (1972).

Zeigler's challenges to the narrow scope of the post–reinstatement hearing also raise no issues of grave constitutional concern. To hold otherwise would unduly frustrate the legislative purpose and be inconsistent with the Court's reasoning heretofore advanced. In addition, a full hearing on the merits of this matter is scheduled for February 1981.

In conclusion, this Court finds that Zeigler has not made an adequate showing that its due process claim will succeed on the merits. It is, in fact, quite doubtful. Accordingly, Zeigler's Motion for Preliminary Injunctive Relief is hereby DENIED.

IT IS SO ORDERED.