**SOUTHERN OHIO COAL COMPANY, Plaintiff,**

v.

**Ray DONOVAN, Secretary of Labor, et al., Defendants.**

**No. C–2–78–1041.**

United States District Court, S.D. Ohio, E.D.

Sept. 7, 1984.

Alvin J. McKenna, D. Michael Miller, Alexander, Ebinger, Fisher, McAlister & Lawrence, Columbus, Ohio, for plaintiff.

Page Jackson, U.S. Dept. of Labor, Arlington, Va., Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court upon plaintiff's motion for summary judgment and defendants' motion to dismiss. Plaintiff's motion presents a single, narrow issue: is a coal mine operator unconstitutionally deprived of procedural due process when the Federal Mine Safety and Health Review Commission, without a prior hearing, issues an ex parte order reinstating a discharged coal miner who alleges that he was discharged in violation of federal mine safety laws? Defendants seek dismissal on the grounds that this action is moot and that this Court lacks jurisdiction over the subject matter. For the reasons set forth below, the Court determines that defendants' motion to dismiss is without merit, and grants summary judgment in favor of plaintiff.

### I.

The Mine Safety and Health Act of 1977, P.L. 95–164, was enacted by Congress to improve federal standards and enforcement procedures relating to safety in the coal mining industry. To encourage participation by coal miners in monitoring compliance with safety standards, the Act granted certain rights to miners, including the right to have a representative accompany inspectors during regular mine inspections and the right to request an immediate inspection whenever a miner has reasonable grounds to believe a condition violating safety standards exists. 30 U.S.C. § 813(f) and (g). In order to protect individual miners from possible retaliation for exercising their rights, Congress included the following anti-discrimination provision: "No person shall discharge or in any manner discriminate against ... any miner ... because such miner ... has filed or made a complaint under or related to this chapter...." 30 U.S.C. § 815(c)(1).

As a means to remedy violations of the anti-discrimination clause, the Act further provides a mechanism whereby a miner alleging wrongful discharge can seek temporary, and eventually permanent, reinstatement:

Any miner ... who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subdivision may, within 60 days after such violation occurs, file a complaint with the Secretary [of Labor] or his delegate alleging such discrimination. Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate.... [I]f the Secretary finds that such complaint was not frivolously brought, the [Federal Mine Safety and Health Review] Commission, on an expedited basis upon application of the Secretary, shall order the immediate reinstatement of the miner pending final order on the complaint.

30 U.S.C. § 815(c)(2). Thereafter, if the Secretary makes a determination that the miner's complaint is meritorious, he must file a formal complaint and a proposed order granting relief with the Commission. The Commission is directed to hold a hearing on the matter and issue a final order, based on findings of fact, which may affirm, modify, or reject the Secretary's proposed order, and may require permanent reinstatement of the miner to his former position with back pay and interest. 30 U.S.C. § 815(c)(2).

The facts giving rise to this lawsuit as found by the Court from the evidence adduced at the hearing on plaintiff's motion for a preliminary injunction are not disput-

ed by the parties. Plaintiff, Southern Ohio Coal Company, owns and operates Meigs Mine No. 1 located in Meigs County, Ohio. Defendant Terry Hill was employed at plaintiff's mine as a section foreman until June 7, 1978. On that date Hill was fired for the stated reason of excessive absenteeism. It is undisputed that Hill failed to appear for work or report off on June 2, 1978, and that he had previously been given at least one written warning about unexcused absences.

On June 19, 1978, Hill filed a complaint with the Secretary of Labor alleging that he had been discharged because of his concerns over safety conditions at the mine. At about the same time, he also filed a claim for unemployment compensation with the State of Ohio. During the course of a hearing on his unemployment claim, Hill testified that he was suffering from a hernia condition that rendered him unable to perform his duties in the mine. After filing his discrimination complaint, Hill met approximately three times with an investigator of the Federal Mine Safety Administration, but never disclosed his claimed medical disability to the Administration. On September 12, 1978, defendant James A. Broderick, an administrative law judge for the Federal Mine Safety and Health Review Commission, issued an ex parte order requiring the plaintiff to reinstate Hill to his former position as a section foreman based on the Secretary's finding that Hill's complaint of discrimination was not "frivolously brought." After being informed of Hill's claimed hernia condition, the Secretary agreed to a modification of the order permitting "economic reinstatement," meaning that Hill was to be paid his full salary as a section foreman but was not required to work.

Plaintiff filed this action on October 10, 1978, seeking declaratory and injunctive relief. Based on the evidence and arguments of counsel produced at the preliminary hearing, the Court concluded that plaintiff had demonstrated a substantial likelihood of succeeding on the merits of its claim for deprivation of procedural due process.[1] In reaching that conclusion, the Court considered the three factors outlined by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Those three factors are:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

With respect to the first factor, the Court found that plaintiff had a "compelling" interest in being able to discharge for cause a person who, like Terry Hill, was employed in the sensitive supervisory position of foreman in a coal mine. *Southern Ohio Coal Co. v. Marshall*, 464 F.Supp. 450, 456 (S.D.Ohio 1978). Second, the Court found that the *ex parte* temporary reinstatement procedure used by the defendant government agencies to determine whether the miner's complaint was "frivolously brought" was inherently unreliable. The Court further found that the potential value of an evidentiary hearing prior to this determination is great. *Id.* Finally, the Court concluded that to require an evidentiary hearing prior to the initial reinstatement decision would place little, if any, additional burden upon the government agencies involved, considering that the Secretary is required in any event to make a factual investigation of the complaint before recommending reinstatement. The

---

1. Plaintiff also challenged the reinstatement order on the grounds that Hill was not a "miner" within the statutory meaning of that term, and that the reinstatement order violated plaintiff's substantive due process rights. The Court dismissed those claims for failure to exhaust administrative remedies, but found that plaintiff had no adequate administrative remedy to pursue in challenging the validity of the reinstatement procedure itself. *Southern Ohio Coal Co. v. Marshall*, 464 F.Supp. 450, 454–55 (S.D.Ohio 1978).

Court was also unpersuaded that such a hearing would cause any harmful delay over and above the delay already found to exist in the procedures used. *Id.*

Finding that plaintiff had established all the other requirements for a preliminary injunction, the Court accordingly issued an order barring enforcement of the Commission's order temporarily reinstating Terry Hill, and ordered defendants to give plaintiff "notice and the opportunity to be heard prior to the issuance of any [future] order requiring the immediate reinstatement of Terry L. Hill pending final order on Hill's complaint." *Id.*, 464 F.Supp. at 457–58.

Shortly after the issuance of that order, defendant Hill found other employment and withdrew his request for reinstatement at plaintiff's mine, which prompted the defendants to move for dismissal on grounds of mootness. The Court denied defendants' motion, finding it probable that the same ex parte reinstatement procedure could be used against the plaintiff on future occasions and concluding that the complaint, insofar as it sought declaratory relief, continued to present a justiciable issue "capable of repetition, yet evading review." Opinion and Order of March 31, 1980.

On July 30, 1979, final rules of procedure for the Federal Mine Safety and Health Review Commission became effective. 44 Fed.Reg. 38226 *et seq.*, codified at 29 C.F.R. §§ 2700 *et. seq.* The procedures governing temporary reinstatement of miners who allege that they were fired in retaliation for expressing concern about mine safety were changed in several respects. The regulations now provide:

An application for temporary reinstatement shall state the Secretary's finding that the miner's complaint of discrimination, discharge or interference was not frivolously brought and shall be accompanied by a copy of the miner's complaint, an affidavit setting forth the Secretary's reasons for his finding, and proof of service upon the operator. The application and accompanying documents shall be examined upon an expedited basis, and, if it appears that the Secretary's finding is supported by the application and accompanying documents, an order of temporary reinstatement shall be immediately issued. The order shall be effective upon receipt or actual notice. If the person against whom relief is sought requests a hearing on the order, a Judge shall, within 5 days after the request is filed, hold a hearing to determine whether the miner's complaint of discrimination, discharge or inteference (sic) was frivolously brought. The judge may then dissolve, modify or continue the order.

29 C.F.R. § 2700.44(a). The defendants have renewed their motion to dismiss this action as moot, arguing that the new procedures obviate the problems of due process found by this Court when the preliminary injunction was granted.

In addition, the defendants have renewed their argument that this Court lacks jurisdiction over the subject matter of this action. The defendants bring to the Court's attention a number of cases treating this issue that have been decided since this Court last examined this question. The Court considers a suggestion that it lacks subject matter jurisdiction to be proper at any stage of the proceeding. Fed.R.Civ.P. 12(h)(3).

In part II of this Opinion, the Court will address the defendants' motion to dismiss, examining the various grounds advanced in support. Having determined that this motion must be denied, the Court will discuss the merits in part III of this Opinion.

## II.

### A.

■ The defendants submit that this Court lacks jurisdiction over the subject matter of this action. They argue that the procedures for review by the Courts of Appeals set forth in the Mine Safety and Health Act were intended to be exclusive, and that this Court is precluded from hearing this matter. This issue was presented to the Court by the defendants in response to plaintiff's motion for a preliminary in-

junction and decided adversely to them. 464 F.Supp. at 453–5.

The Mine Health and Safety Act contains a provision for judicial review. In pertinent part, it provides:

> Any person adversely affected ... by an order of the (Federal Mine Safety and Health Review) Commission issued under this chapter may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit, by filing in such court ... Upon such filing, the court shall have exclusive jurisdiction of the proceeding and of the questions determined therein....

30 U.S.C. § 816(a)(1). The Act does not expressly provide that this procedure for review is to be exclusive. The Court has examined the legislative history accompanying the Act, and finds that it is silent on the question. Sen.Rep.No. 95–181, 95th Cong., 1st Sess., *reprinted in* 1977 *U.S. Code Cong. & Ad.News*, 3401 *et seq.* Therefore, any conclusion that this Court lacks jurisdiction must rest upon an inference that Congress intended to preclude district court review.

The defendants submit that this inference should be drawn because of the doctrine of *Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). The Supreme Court there stated: "where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Id.* at 420, 85 S.Ct. at 557. The Court held that a challenge by rival banks to Federal Reserve Board approval of the organization of a new bank could not be heard in district court. The statute involved in the case, the Bank Holding Company Act of 1956, provided for review of decisions of the Federal Reserve Board in the courts of appeals. It did not, however, expressly state that these procedures were to be exclusive. The Court inferred exclusivity, reasoning that the matter lay within the specialized expertise of the agency and not within the conventional experience of the district courts. *Id.* at 420–1, 85 S.Ct. at 557–8. The statutory scheme involved in *Whitney Bank* is thus analogous to that of the instant case. The defendants invite the Court to infer that this Court lacks jurisdiction.

Having reconsidered the matter, the Court is of the opinion that this invitation should be resisted. The defendants' argument sweeps too broadly. As the Sixth Circuit explained in a recent case:

> Nearly all the cases which address the question of district court jurisdiction for nonstatutory review of administrative action recognize that in narrow circumstances some residuum of federal question subject matter jurisdiction may exist in the United States District Court, although apparently otherwise precluded by a comprehensive statutory review scheme.

*Louisville and Nashville Railroad Co. v. Donovan*, 713 F.2d 1243, 1246 (6th Cir. 1983). The Sixth Circuit stated that direct review in the district court will be available when there is a "patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review ..." *Id.* at 1247, quoting *Nader v. Volpe*, 466 F.2d 261, 265–6 (D.C.Cir.1972). The Court concludes that plaintiff's due process challenge to procedures for temporary reinstatement falls within the narrow circumstances alluded to by the Sixth Circuit. An agency can fairly be said patently to violate its authority if it institutes procedures that deny due process.

The Court last considered its jurisdiction in connection with plaintiff's motion for a preliminary injunction. Plaintiff made three challenges to the temporary reinstatement of Terry Hill. First, plaintiff argued that Terry Hill was not a "miner" within the meaning of the Act so that he was not protected by its provisions for temporary reinstatement. The Court concluded that the determination whether Hill was

a "miner" required administrative expertise in resolving issues of fact. Hence, it declined to consider this issue, and required plaintiff to exhaust administrative remedies. 464 F.Supp. at 454; *compare Louisville and Nashville Railroad Co. v. Donovan, supra.* Second, plaintiff argued that temporary reinstatement violated substantive due process. The Court concluded that this claim also rested upon factual considerations, so that exhaustion of remedies was required. 464 F.Supp. at 454. However, the Court concluded that plaintiff's procedural due process claim rested upon a different footing. The Court noted that where a plaintiff challenges the procedures by which it is forced to act, requiring that the claim be presented first to the agency would work "a present and continuing constitutional deprivation." 464 F.Supp. at 455. Furthermore, the Court noted, "issues raised by this claim do not involve the specialized expertise of the agency, but rather, are peculiarly within the expertise of a court." *Id.* Thus, the Court considered plaintiff's procedural due process claim to be properly before it. *Compare Cerro Metal Products v. Marshall,* 620 F.2d 964 (3d Cir.1980); *Montgomery v. Rumsfeld,* 572 F.2d 250, 252–3 (9th Cir. 1978).

There is solid support for this differential treatment of procedural due process claims in Supreme Court decisions. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) the Court held that a district court has jurisdiction to entertain a due process challenge to an agency's procedures even though they had not been challenged first in the agency and administrative remedies had not been exhausted. The Social Security Act provides for review of "any final decision of the Secretary made after a hearing" in the district courts. 42 U.S.C. § 405(g). It further provides that this avenue of review is to be exclusive. 42 U.S.C. § 405(h). Eldridge's benefits had been terminated and he was notified of his right to seek reconsideration through administrative review. Instead, he filed suit in district court, contending that he was entitled to a pretermination hearing.

In analyzing the issue, the Court noted a "crucial distinction" between claims for entitlement to benefits under Social Security and constitutional challenges that are collateral to a substantive claim.

> A claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing ... Thus ... denying Eldridge's substantive claim 'for other reasons' or upholding it 'under other provisions' at the post-termination stage ... (citation omitted) ... would not answer his constitutional challenge.

*Id.* at 331–2, 96 S.Ct. at 900–1. Thus, the Supreme Court has recognized that exhaustion of remedies does not preclude district court jurisdiction over constitutional challenges to agency procedures. As the Court explained in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), *Eldridge*

> merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence.

*Id.* at 109, 97 S.Ct. at 986, citations omitted. *Cf. also Johnson v. Robison,* 415 U.S. 361, 366–74, 94 S.Ct. 1160, 1165–69, 39 L.Ed.2d 389 (1974); *compare Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), and *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

Furthermore, having examined the cases cited by the defendants as well as those disclosed by its own research, the Court is satisfied that the cases decided under the Mine Safety and Health Act are fully consistent with its prior resolution of these questions. Where Courts have found that they lacked jurisdiction to hear a challenge relating to the Act, the case involved issues lying within the specialized expertise of the Federal Mine Safety and Health Review

Commission. *But see Bituminous Coal Operators' Association v. Secretary of Interior,* 547 F.2d 240 (4th Cir.1977). In *American Coal Co. v. United States Department of Labor, Mine Safety and Health Administration,* 639 F.2d 659 (10th Cir.1981), a coal company sought to challenge an order issued by a mine inspector on the ground that he lacked authority to issue the order under the statute. The Court inferred from the statutory scheme that district court review over actions of mine inspectors was precluded. Similarly, in *Bituminous Coal Operators' Association v. Marshall,* 82 F.R.D. 350 (D.D.C. 1979) the Court concluded that it lacked jurisdiction to hear a preenforcement challenge to regulations implementing a statutory provision providing that a miner's representative shall be given opportunity to accompany an inspector during inspections. *See also U.S. Steel Corp. v. Marshall,* 471 F.Supp. 438 (W.D.Pa.1979). And, in *Council of Southern Mountains, Inc. v. Donovan,* 516 F.Supp. 955 (D.D.C.1981), the Court considered itself without jurisdiction to entertain an action alleging that the Secretary of Labor had failed to carry out his obligations under the statute. Each of these cases involved a question 1:which required specialized expertise for its resolution. Also, in each case, factual material that would be developed in administrative proceedings would aid in resolution of the question.

On the other hand, where the question was not within the specialized expertise of the Federal Mine Safety and Health Review Commission, district court jurisdiction has been recognized. In *Zeigler Coal Co. v. Marshall,* 502 F.Supp. 1326, the Court concluded that it had jurisdiction to consider a due process challenge to the very regulations and practices at issue in the instant case. The Court reasoned that restrictions on judicial review were imposed to achieve two primary purposes: minimal interference with the administrative fact-finding process, and expeditious handling of claims under the Act. It concluded that there is no basis in the statute to infer that due process claims were subject to the statutory review procedures. *Id.* at 1330.

Plaintiff's predicate jurisdiction upon the general federal question jurisdiction statute, 28 U.S.C. § 1331, and, alternatively, upon the mandamus jurisdiction statute, 28 U.S.C. § 1361. For the reasons stated, the Court concludes that it has jurisdiction under section 1331. Alternatively, for the reasons stated by Judge Friendly in *Ellis v. Blum,* 643 F.2d 68 at 78 (2d Cir.1981), the Court also considers its jurisdiction proper under section 1361. The defendants' motion to dismiss for want of jurisdiction is DENIED.

## B

The defendants also submit that this action is moot because new regulations governing temporary reinstatement have been promulgated.

Plaintiff's contention throughout this litigation has been that due process requires that a hearing be held before a miner is temporarily reinstated. Although the regulations have changed, they still do not require a hearing prior to reinstatement. It is plain that this issue is live and in dispute between the parties. The plaintiff remains in the coal business and continues to be exposed to procedures which, it alleges, deprive it of due process. The Court is satisfied that this action continues to present an "actual controversy" that is appropriate for declaratory relief. 28 U.S.C. § 2201; *Powell v. McCormack,* 395 U.S. 486, 517–8, 89 S.Ct. 1944, 1961–2, 23 L.Ed.2d 491 (1969). Where there is a settled and definite government policy that has adversely affected the plaintiff's interests and continues to affect a present interest, declaratory relief is appropriate. *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 125–6, 94 S.Ct. 1694, 1699–700, 40 L.Ed.2d 1 (1974); *Dow Chemical Co. v. United States Environmental Protection Agency,* 605 F.2d 673 (3d Cir.1979); *Florida Board of Business Regulation v. National Labor Relations Board,* 605 F.2d 916 (5th Cir.1979); *see generally* Wright,

Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3533 at 284.

Therefore, defendants' motion to dismiss this action as moot must be DENIED.

### C.

■ Finally, the defendants assert that this case is not ripe for adjudication. The present procedures have not been applied against plaintiff, they argue, so that the present record is not sufficient to allow the Court to apply the tests of *Mathews v. Eldridge, supra*. This assertion is without merit. Counsel for the parties have built a record that is adequate for the purpose of deciding the narrow issue presented by this case. Defendants' motion to dismiss for lack of ripeness is DENIED.

### III

### A.

The defendants do not dispute that some process is due plaintiff. However, they insist that present regulations and practices afford the plaintiff all the due process that the Constitution requires. Plaintiff, on the other hand, insists that due process requires a hearing prior to issuance of an order of temporary reinstatement. The legitimate power of the federal government to order reinstatement of a miner who was discharged for prohibited reasons is not at issue in this litigation. Rather, plaintiff questions the manner in which the government accomplishes its end. "(A) statute or a rule may be held unconstitutionally invalid when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91·S.Ct. 780, 787, 28 L.Ed.2d 113 (1971).

■ A fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978), citing *Boddie v. Connecticut, supra*, 401 U.S. at 379, 91 S.Ct. at 786; *see also Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). However, in some "extraordinary situations" a valid governmental interest may justify postponing the hearing until after the event. *Boddie v. Connecticut, supra*, 401 U.S. at 379, 91 S.Ct. at 786. It is only where the nature of the potential deprivation does not indicate a likelihood of serious loss, and where procedures followed in reaching a decision to act are sufficiently reliable that the risk of erroneous deprivation is minimal that government may act without "some kind of hearing" prior to the time a person is deprived of his property interests. *Memphis Light, Gas & Water Div. v. Craft, supra*, 436 U.S. at 19, 98 S.Ct. at 1565; *accord, Mackey v. Montrym*, 443 U.S. 1, 11–2, 99 S.Ct. 2612, 2617–8, 61 L.Ed.2d 321 (1979); *Dixon v. Love*, 431 U.S. 105, 113–5, 97 S.Ct. 1723, 1727–29, 52 L.Ed.2d 172 (1977); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 617–8, 94 S.Ct. 1895, 1905, 40 L.Ed.2d 406 (1974).

The parties agree that the resolution of this case is controlled by *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews*, the Supreme Court outlined the three factors that must be considered to determine whether a person has been accorded due process. Those three factors are:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

With regard to the first *Eldridge* factor, when it considered the matter upon plaintiff's motion for a preliminary injunction, this Court concluded that plaintiff's private interest in not being required to employ in a sensitive position a man whom it has discharged was "compelling." 464 F.Supp. at 456. An employer must have wide discretion over the management of its personnel. "Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency." *Arnett v. Kennedy,* 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (Powell, Jr., concurring). Thus, this Court still concludes that consideration of the first *Eldridge* factor tends to support the requirement of an evidentiary hearing prior to adverse administrative action.[2]

In addition, this Court previously concluded that the third *Eldridge* factor—the governmental interest, including the administrative burden associated with an evidentiary hearing prior to the issuance of a temporary reinstatement order—was not substantial. The Court noted that a factual investigation was required by the statute in any event. 30 U.S.C. § 815(c)(2). In addition, current regulations require a hearing within five days after issuance of an order of temporary reinstatement; thus any additional administrative burden is negligible. While the Court acknowledges that there is a strong public interest in prompt reinstatement of miners who have been discharged for prohibited reasons, it does not perceive that this interest would be frustrated significantly by requiring a prior hearing.

Thus, the controlling issue pertains to the second *Eldridge* factor: whether the present procedures and practices are sufficiently reliable that an evidentiary hearing would be of little additional value. One relevant consideration is the nature of the inquiry undertaken in the administrative proceeding. Where a wide variety of information may be relevant, and issues of witness credibility and veracity are critical to decisionmaking, written submissions are "a wholly unsatisfactory basis for decision." *Goldberg v. Kelly, supra,* 397 U.S. at 269, 90 S.Ct. at 1021; *see also Califano v. Yamasaki,* 442 U.S. 682, 696–7, 99 S.Ct. 2545, 2555–56, 61 L.Ed.2d 176 (1979), and *Ross v. Horn,* 598 F.2d 1312, 1319 (3d Cir.1979), *cert. denied* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *compare Mitchell v. W.T. Grant Co., supra,* 416 U.S. at 617, 94 S.Ct. at 1905. It is only where the inquiry is "sharply focused" and "easily documented" that *ex parte* administrative investigations are considered reliable. *Mathews v. Eldridge, supra,* 424 U.S. at 343–4, 96 S.Ct. at 907.

Also relevant is the kind of information upon which the administrative process relies. Where the basis for administrative action consists of objective or historical facts that are within the personal knowledge of the government official or readily ascertainable by him, the risk of error is not likely to be substantial. *Mackey v. Montrym, supra,* 443 U.S. at 13–4, 99 S.Ct. at 2618–9; *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975). On the other hand, where the facts are likely to be disputed, some predeprivation procedural protection is required. *Goldberg v. Kelly, supra,* 397 U.S. at 269–70, 90 S.Ct. at 1021–22; *Memphis Light, Gas & Water Div. v. Craft, supra,* 436 U.S. at 18, 98 S.Ct. at 1564; *Mitchell v. W.T. Grant Co., supra,* 416 U.S. at 617, 94 S.Ct. at 1905.

---

**2.** This substantial private interest distinguishes the present case from *Blackhawk Mining Co., Inc. v. Andrus,* 711 F.2d 753 (6th Cir.1983).

There, the Court agreed with the district court's characterization of the plaintiff's private interest as "slight." *Id.* at 757.

### B.

The Court now turns to examine the practices of the defendants regarding temporary reinstatement. The relevant facts are not in dispute between the parties.

The procedure for temporary reinstatement is initiated by the filing of a complaint by a miner with the Secretary of Labor. To be timely, the complaint must be filed within 60 days of the alleged violation. 30 U.S.C. § 815(c)(2). The Secretary must begin an investigation within 15 days. In discharge cases, Labor Department policy is that a preliminary investigation should be conducted and a report of the findings prepared within 10 days. Field investigators are instructed to interview the complainant and the operator and to develop "minimal supporting evidence which attests to the veracity of the complainant." Affidavit of James Belcher, attachment 1.

The report is then forwarded to the Secretary of Labor for review. Under the statute, the purpose of the review is to determine whether the complaint was "frivolously brought." 30 U.S.C. § 815(c)(2). In making this determination, the Secretary applies four tests: 1.) is the complainant within the protected class? 2.) was the complaint timely filed? 3.) does the complaint allege protected activity? and 4.) taken together, do the complaint, interviews, and "creditable evidence" indicate that the complainant has established a colorable claim which arguably is substantial. Affidavit of James Belcher.

If the Secretary concludes that the complaint was not frivolously brought, the complainant is contacted to verify that he still desires reinstatement. Also, the operator is advised that the Secretary has determined that the complaint was not frivolously brought, and settlement is explored. If settlement efforts are unsuccessful, after final notice to the respondent, an application for temporary reinstatement is filed. Affidavit of Thomas Piliero.

An application for temporary reinstatement consists of the miner's complaint, an affidavit setting forth the Secretary's reasons for his finding that the complaint was not frivolously brought, and proof of service on the operator. 29 C.F.R. § 2700.-44(a). The Secretary's affidavit recites historical and jurisdictional facts, and states, in a conclusory manner, the results of the field investigation. Affidavit of Thomas Piliero, attachment 1. The application and supporting documents are examined facially by defendant Mine Health and Safety Review Commission. Unless it appears, on the face of the application, that the Secretary's finding was arbitrarily or capriciously made, an order of temporary reinstatement "shall be immediately issued." 29 C.F.R. § 2700.44(a).

Current regulations provide that the operator against whom an order of temporary reinstatement is issued may request a hearing before an Administrative Law Judge to determine whether the miner's complaint was frivolously brought. The hearing must be held within five days after the request was filed. 29 C.F.R. § 2700.44(a). Plaintiff asserts, and the defendants do not dispute, that the post-order hearing is narrow in scope. It focuses upon whether the Secretary was arbitrary and capricious in his determination that the complaint was not frivolously brought.

Having examined the materials submitted by the parties and considered their arguments, the Court concludes that the investigation and review procedures instituted by the defendants are not sufficiently reliable to conform to the requirements of due process in light of the private and governmental interests at stake. For the following reasons, the Court is of the opinion that the present procedures carry with them a meaningful risk of erroneous deprivation, and that the additional safeguard of a pre-order hearing would be significant.

It is clear to the Court that the critical and central question in the entire temporary reinstatement proceeding is the credibility of the complaining miner. It is equally clear that a great variety of information, derived mainly but not entirely from interviews of persons likely to have first-hand

knowledge, is relevant to this determination. Even conceding the complete good faith of the Secretary of Labor, it is an irreducible fact that field investigators must compile diverse information and make difficult judgments regarding the credibility of the complaining miner and witnesses. In reality, the investigators must make a decision much like that of a judge in an employment discrimination case. Yet, they must do so without the assistance of information developed by the adversary process. Nor is the field investigation subject to those guarantees of procedural regularity that characterize a hearing.

Once the process moves beyond the field investigation stage, the administrative review is of a paper record. While this may correct determinations that lack any independent support at all, it is inherently incapable of correcting erroneous credibility determinations. *A fortiori,* the facial review of an application for temporary reinstatement by defendant Federal Mine Safety and Health Review Commission also will not correct erroneous credibility determinations. Finally, it does not appear that the post-order hearing provided by current regulations squarely addresses the problem. The hearing is confined to the question whether the Secretary of Labor behaved arbitrarily.

Thus, the administrative review process contains a meaningful risk of error. The review process is reasonably calculated to correct arbitrary action. However, it is possible that the underlying miner's complaint was in fact frivolously made, yet that the Secretary made a reasonable investigation and concluded otherwise. It further appears to the Court that a pre-order adversary hearing is likely to correct erroneous determinations. The questions involved in reinstatement proceedings are "inherently subject to factual determination and adversarial input." *Mitchell v. W.T. Grant Co., supra,* at 617, 94 S.Ct. at 1905.

Therefore, this Court concludes that to the extent that the current practices and regulations of the defendants fail to provide the plaintiff with a meaningful opportunity to be heard, and to present evidence in opposition to a request for an order of temporary reinstatement *prior* to the issuance of the order by defendant Federal Mine Safety and Health Review Commission, and to receive the exercise of judgment by a neutral judicial official upon all the evidence properly before him prior to the issuance of such order, plaintiff is denied due process of law.

WHEREUPON, upon consideration and being duly advised, this Court determines that the defendants' motion to dismiss is without merit and, therefore, is DENIED, and that the plaintiff's motion for summary judgment is meritorious and, therefore, is GRANTED. Further, it is the judgment of this Court and that judgment is hereby DECLARED, that to the extent that the practices and regulations of defendant Secretary of Labor are inconsistent with this Opinion, they deny plaintiff due process of law and, therefore, are UNCONSTITUTIONAL.

IT IS SO ORDERED.