# Whether the Office of Special Counsel for Immigration Related Unfair Employment Practices is Empowered to Challenge the Constitutionality of State Statutes

The statutory exemption for "discrimination ... otherwise required in order to comply with law, regulation, or executive order" excludes from the scope of the Office of Special Counsel's jurisdiction all discriminatory activity based on state law.

March 16, 1989

MEMORANDUM OPINION FOR THE SPECIAL COUNSEL FOR
IMMIGRATION RELATED UNFAIR EMPLOYMENT PRACTICES

You have asked for our opinion on whether the Office of Special Counsel for Immigration Related Unfair Employment Practices may challenge discrimination on the basis of citizenship status that is committed pursuant to state law or whether such conduct is exempted from your jurisdiction pursuant to the exception found in 8 U.S.C. § 1324b(a)(2)(C).[1] We believe that the language "discrimination ... otherwise required in order to comply with law, regulation, or executive order" was intended to exclude from the scope of the jurisdiction of your Office all discriminatory activity based on state law.

We have reached this conclusion based on the plain language of the statute that action taken pursuant to any "law, regulation, or executive order" of the state or federal government is exempted from the definition of "unfair immigration-related employment practice." This reading of the language is bolstered by the fact that since state statutes are generally presumed to be constitutional, the drafters of the exception would ordinarily have assumed that the "laws" referred to would be presumed to be constitutional until actually held to be otherwise. See, e.g., Salsburg v. Maryland, 346 U.S. 545, 553 (1954) ("The presumption of reasonableness is with the State.")(footnote omitted); Davis v. Department of Labor, 317 U.S. 249, 256 (1942) ("Faced with this factual problem we must give great — indeed, presumptive — weight to the conclusions ... to the state

---

[1]Memorandum for Douglas W Kmiec, Assistant Attorney General, Office of Legal Counsel, from Lawrence J. Siskind, Special Counsel, Office of Special Counsel for Immigration Related Unfair Employment Practices (Feb. 22, 1988) ("Memorandum").

statutes themselves."); *Atchison, T. & S. F. R.R. v. Matthews*, 174 U.S. 96, 104 (1899) ("It is ... a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature was one in the enactment of which it has transcended its power.").[2] Thus, we believe Representative Frank's reference to "valid" laws must be understood in light of a state law's presumed validity. 130 Cong. Rec. 15,938 (1984). Of course, this presumption of validity and the limitation on your jurisdiction would not apply where the particular state law had been invalidated or found unconstitutional.[3]

Disregarding the plain language of the statute in order to permit the Office of Special Counsel to challenge action taken pursuant to state law would also raise more complex issues, some of constitutional dimension. In this regard, considerable doubt exists whether administrative law judges ("ALJ") can determine the constitutionality of state statutes or are precluded from doing so by Article III of the Constitution. In assessing whether the assignment of particular duties to a non-Article III body unconstitutionally infringes upon the prerogatives of the judicial branch, the Court has been especially wary about authorizing the assignment to non-Article III tribunals of state law questions, *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982), and constitutional questions, *Johnson v. Robison*, 415 U.S. 361, 369 (1974). Under your memorandum, however, an ALJ would be making determinations about both. Where that is the case an Article III court must exercise the firmest control over the non-Article III tribunal.

That control is missing here. Review of the ALJ decision is only in the court of appeals. It is not said to be de novo, and the court of appeals has nothing to review other than the "cold record." *United States v. Raddatz*, 447 U.S. 667, 679-80 (1980) (distinguishing between "an appellate court's review of a *nisi prius* judge in a trial on the merits" and "a special master's findings or actions of an administrative tribunal on findings of a hearing officer"). In *Raddatz*, the Supreme Court upheld a magistrate's factual determinations in a constitutional proceeding only because the magistrate was subject to the "broad discretion" of the district court

---

[2] We are also fortified in this conclusion by the fact that the use of the word "law" in the exception in section 1324b(a)(2)(C) is similar to its use in other jurisdictional statutes. For example, 28 U S C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the . laws . of the United States " Yet there is no doubt that an action to challenge an unconstitutional law is one "arising under" the laws of the United States.

[3] Where a particular state law has not been found unconstitutional, but you believe the state law is, under analogous Supreme Court precedent, arguably unconstitutional on its face or as applied, we recommend that you bring this concern to the attention of the Assistant Attorney General for Civil Rights for a discussion of whether federal litigation, a denial of federal benefits or some other appropriate action should be taken in light of the constitutional doubts presented at that time. This Office, of course, would be pleased to assist you or Civil Rights in evaluating these constitutional questions as they arise.

judge "to accept, reject, or modify the magistrate's proposed findings." *Id.* at 680. Had the proceeding not "[been] 'constantly subject to the court's control,'" *id.* at 682 (quoting *Crowell v. Benson*, 285 U.S. 22 (1932)), the Court would have found that the statutory procedure did not "strike[] the proper balance between the demands of due process and the constraints of Art. III." *Id.* at 683-84. Stated another way, "'[i]n cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function.'" *Id.* at 682 (quoting *Crowell*, 285 U.S. at 60).

Were the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (1983) ("IRCA") to be read as giving ALJs the authority to make determinations as to the constitutionality of state law, the established procedures might well fall short of the requirements set forth in *Raddatz*. The facts upon which the determination of the constitutionality of a state statute would be based would be found by a non-Article III official. Those facts could then be reviewed only by a court of appeals, which review is not even (unlike the procedures reviewed in *Raddatz*) designated as "de novo." This ill-comports with the respect due state statutes in our federal system. *See, e.g., Salsburg v. Maryland; Davis v. Department of Labor; Atchison, T. & S. F. R.R. v. Matthews.* Moreover, in the event an ALJ found a challenged statute constitutional, an individual claiming that the state law is unconstitutional would, on appeal — especially in an as-applied challenge — be deprived of the opportunity to have an Article III court assess in the first instance the alleged facts upon which his claim is based. This *Raddatz* forbids.

*CFTC v. Schor*, 478 U.S. 833 (1986), highlights the differences between the circumstances when a non-Article III tribunal may decide certain questions and the situation at issue here. In *Schor*, the Supreme Court held that a non-Article III tribunal could entertain state law counterclaims even though the only review was by a court of appeals. The Court based this decision on a number of important factors. First, Mr. Schor consciously chose the speed and inexpense of the administrative procedure to vindicate his right to reparations, thus choosing to have his claim adjudicated before a non-Article III court. The state whose law would be challenged by the Special Counsel would not appear voluntarily. Moreover, the other factors considered by the *Schor* Court in assessing whether the adjudication of the constitutionality of the state statute "in a non-Article III tribunal impermissibly threatens the institutional integrity of the Judicial Branch," 478 U.S. at 851, illustrate the constitutional problems raised by ALJ review of constitutional questions. The *Schor* Court looked to (1) "the extent to which the 'essential attributes of judicial power' are reserved to Article III courts"; (2) "conversely, the extent to which the non-Article III forum exercises the range of jurisdiction and powers normally vested only in Article III courts"; (3) "the origins and

importance of the right to be adjudicated"; and (4) "the concerns that drove Congress to depart from the requirements of Article III." *Id.* (citing *Thomas,* 473 U.S. at 587, 589-93); *Northern Pipeline,* 458 U.S. at 84-86.

Turning to the first two considerations, the essential attributes of judicial power are not sufficiently reserved to an Article III court. This is illustrated by looking to the "converse": whether ALJs are here vested with powers "normally vested only in Article III courts." Determining the constitutionality of a state statute is one of the most important of all Article III functions. It leads to precisely the kinds of determinations that are "normally vested only in Article III courts", *Schor,* 478 U.S. at 851, and would take the ALJ well beyond the "particularized area of law" which non-Article III tribunals may well be able to handle. *Id.* at 852.[4]

Permitting such determinations by an ALJ would also run counter to the strong tradition that constitutional issues should not be resolved in administrative proceedings.[5] Administrative agencies are often said to "have no power to pass upon the constitutionality of administrative or legislative action." *Zeigler Coal Co. v. Marshall,* 502 F. Supp. 1326, 1330 (S.D. Ill. 1980).[6]

---

[4]This is illustrated by the likely response to a challenge by the Special Counsel The state (or state official) will assert that the citizenship requirements were established by "law." This would require the ALJ first to construe the state law, something about which even Article III courts normally defer to state courts. *See, e.g , Hortonville J S D. No 1 v Hortonville Ed Ass'n,* 426 U.S 482, 488 (1976) ("We are, of course, bound to accept the interpretation of Wisconsin law by the highest court of the State ") (citing cases), *Mullaney v Wilbur,* 421 U.S 684, 691 (1975) ("This Court, however, repeatedly has held that state courts are the ultimate expositors of state law.") (citing cases) Next, the ALJ would have to decide whether the statute accords with the state's constitution *Cf Kizzier Chevrolet Co v General Motors Corp ,* 705 F 2d 322, 329 (8th Cir ), *cert denied,* 464 U.S. 847 (1983) ("Where state law supplies the rule of decision, it is the duty of federal courts to ascertain and apply that law.") Then, the ALJ will have to determine whether under the Supreme Court's jurisprudence, the citizenship requirement is justified Finally, the ALJ will have to determine whether the individual state official is immune from the civil penalty portion of the judgment under the common-law doctrine of official immunity He would further have to determine whether he can require the state (by enjoining the state official) to hire the individual. 8 U S C § 1324b(g)(2)(B)(iii) and (iv).

[5]Although your Memorandum only raises the issue of state laws, your reading of the statute would also require us to resolve the issue of whether the Special Counsel could challenge as unconstitutional not only state laws but also federal laws, regulations, and executive orders. 8 U S C § 1324b(a)(2)(C) (discrimination compelled by any "law, regulation, or executive order") If the Special Counsel could bring such a challenge to federal laws, regulations, or executive orders, this would raise substantial difficulties For ALJs to be vested with the authority to adjudicate the constitutionality of federal statutes would plainly be contrary to the oft-made Supreme Court pronouncement, alluded to above, that "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies " *Johnson v Robison,* 415 U.S 361, 368 (1974) (quoting *Oestereich v. Selective Service Bd.,* 393 U.S. 233, 242 (1968)) (Harlan, J , concurring in result) Moreover, for ALJs to decide the constitutionality of federal executive orders and regulations would raise two severe constitutional problems. First, the unitary executive established by the Constitution in Article II forbids one of the President's subordinates to challenge in court the constitutionality of an executive order. Second, it would also test the limits of Article III's "case or controversy" requirement to suggest that the Special Counsel (assuming the ALJ concurred) could challenge in court the regulations of another part of the executive branch

[6]Whether or not this is true — and we note in passing that the authority of an administrative agency to pass upon the constitutionality of state and federal legislation may well differ — we are hesitant to impute to Congress a desire to vest in the ALJs created by IRCA the power to find a state law unconstitutional when that is no where alluded to in the statute or legislative history.

We raise these issues above only to illustrate the dilemmas presented if the plain meaning of the statute is disregarded.[7] We do not think Congress would have left these complex and difficult issues unaddressed, and this too, favors adherence to the plain language of the statute. We have therefore concluded that discrimination because of citizenship status that is required in order to comply with state law is excepted from the definition of an unfair immigration-related practice within the meaning of 8 U.S.C. § 1324b.

That said, we note Mr. Elhajomar is not without remedies. He may challenge the validity of the Hawaii law in state or federal court. The Department could assist him, if it chose, through a Civil Rights Division amicus brief or by intervening in such a proceeding. Alternatively, the Department might take steps to terminate federal monies unless the constitutional concern was rectified. For these reasons, as suggested earlier, we believe you should raise any arguable unconstitutionality of a state law with the Civil Rights Division. However, Congress has chosen to exempt discrimination based on citizenship status that is required by "law, regulation, or executive order" from the meaning of "unfair immigration-related employment" practices and we believe that language must govern. 8 U.S.C. § 1324b(a). Therefore, the Special Counsel may not use IRCA to challenge action taken pursuant to state law.

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7]In addition, a reading at odds with the plain meaning would mean that although the Special Counsel could sue a state, the complainant would probably be barred by the Eleventh Amendment. The Eleventh Amendment would not preclude a suit by the Special Counsel against a state, for the Special Counsel is not suing as "a Citizen of another State." Moreover, the Court has held that the Eleventh Amendment does not bar suits by the federal government against a State. *Monaco v. Mississippi*, 292 U.S. 313, 329 (1934) However, the statute also provides for a private right of action if the Special Counsel does not act on a matter. 8 U.S.C. § 1324b(d)(2) It would be, nevertheless, problematic for Mr Elhajomar to be permitted to sue a state in his individual capacity